## S. G. SMITH v. STATE.

No. A-24.    Opinion Filed April 2, 1910.

(108 Pac. 418.)

1.    WITNESSES—Impeachment — Contradictory Statements... It is proper to show inconsistent statements of a witness, made out of court, to affect his credibility.

2.    EVIDENCE—Other Offenses.    Upon the subject of motive or intent, other transactions tending to prove its criminal existence, even though they may involve other offenses, may be given in evidence against the defendant,  but such evidence must be so limited and restricted as to leave the jury only at liberty to use it to discover the motive or intent actuating the accused in the act for which he is on trial.

3.    **APPEAL—Evidence—Perjured Testimony.** A judgment of conviction will be reversed on appeal, where the record shows that it is founded solely on perjured testimony.

(Syllabus by the Court.)

*Appeal from Pittsburg County Court; R. W. Higgins, Judge.*

S. G. Smith was convicted of selling intoxicating liquors, and he brings error. Reversed and remanded.

*Stuart & Gordon, J. S. Arnote* and *J. H. Wilkins,* for plaintiff in error.

*Fred S. Caldwell,* Counsel to the Governor, for the State.

No briefs reached the reporter.

DOYLE, JUDGE. · Plaintiff in error, S. G. Smith (hereinafter designated defendant), was convicted in the county court of Pittsburg county upon · an information charging him with furnishing intoxicating liquor to one Tom Lewis, and was on the 16th day of July, 1908, sentenced to imprisonment in the county jail for a period of 60 days, and to pay a fine of $100 and ˙costs, from which judgment the defendant appeals to this ˙court.

The petition avers 22 assignments of error. We deem it unnecessary to consider the numerous questions presented, because, upon a careful examination of the case, we are convinced that the testimony does not establish defendant's guilt, and is so uncertain and contradictory that it is insufficient to support the verdict. It appears from the record that Tom Lewis, the complainant, is a self-confessed perjurer. He testified that he lived in Hughes county; that on July 2d he came to McAlester with one Edd Colbert; that while there he went with Henry Sealey to the law office of S. G. Smith, the defendant; that Smith had a half pint of whisky, from which he took three drinks, Henry Sealey three drinks and Smith one drink, and that the bottle was still half full, and that he was pretty full; that he had not been drinking before his visit to the defendant's office; and that he was not indebted to the defendant for services rendered or for money borrowed. The

prosecution was then permitted, over the objection of the defendant, to ask complainant whether or not he had any business dealings with Smith the day he got the whiskey, and whether or not he had anything to do with some checks that day. Witness testified that he signed two checks, each for $10; that on one of the checks witness received $6. These checks were protested, and the next day witness was arrested for issuing said checks. He further testified that he had signed a written statement denying that defendant did 'at any time furnish him whisky, and that he had sworn to said statement.

Henry Sealey, on the part of the prosecution, testified that he went with Lewis to Smith's office, and Smith had a half pint of whisky. Asked if Smith gave Lewis some whisky, he said: "No, I did not see him." He also testified that Lewis took three drinks and witness three drinks and Smith one, leaving about the length of a finger in a half-pint bottle. He was asked if he had signed a statement in part as follows:

"I was with Tom Lewis all day. He was drinking. When he came in on the train from Calvin I saw him as soon as he came up town. I first saw him in front of the Wells-Fargo Express Co. office. I never did in my life see Mr. Smith with any whisky, and I never did at any time see Mr. Smith give Tom Lewis a drink of whisky. Mr. Smith never did at any time give me a drink of whisky nor did he ever at any time offer me a drink. Henry Sealey. Witnesses to signature: S. J. Small. O. C. Warner. John Elsing. R. P. Fay. A. E. Becker. G. S. Russell S. S. Smith."

He denied making this statement and said that he never signed the same. After several witnesses had testified that the statement was read to him, and that he had signed the same, when called in rebuttal, he admitted that he had signed said statement.

G. E. Vining, a witness for the prosecution, testified: That he ran a second hand store, and over the objection of the defendant he was permitted to testify that on the day charged defendant presented to him a check signed by Tom Lewis, payable to defendant, and indorsed by defendant, for which he paid

defendant $10. At the same time Tom Lewis had another check for $10, payable to defendant, and indorsed by defendant. That he handed the money for the second check to Tom Lewis, but Smith took it'and gave Lewis $5.50, and kept the balance. That the checks were protested, and that he filed a complaint against Tom Lewis, and had him arrested for passing said checks.

On the part of the defense W. R. White testified that he knew Henry Sealey, that he read to him his statement before he signed it, and that he signed the same in his presence.

Wood N. Arnold testified that on July 2d, he met Henry Sealey in front of his office, and talked with him, and that he seemed to be drinking and asked witness to have a drink; that he asked him if he knew where the defendant Smith was, and where he could find him, and said he had some business with Mr. Smith and wanted to see him.

Sam Small testified that he was asked to witness Henry Sealey's signature to said statement; that he asked him if that was his signature and he said it was.

Tom Taylor testified that he was a member of the bar of Pittsburg county; that he saw Tom Lewis on the 2d day of July; that he had a half-pint bottle about half full of whisky; that Tom Lewis and Johnson Frasier and Edd Colbert came to his office, and, while there, Lewis gave Frasier a check for $10, asking witness to write it for him. Witness then signed it.

The defendant testified he lived in McAlester 16 years, and denied he ever gave any whisky to Tom Lewis or to Henry Sealey; that he saw them on or about the 2d of July; that Tom Lewis had visited his office on several occasions, and asked him to sell his surplus land and be his agent; that on various occasions he wanted a dollar or two, and the defendant let him have it; that on the day in question Lewis told him he had $50 in the bank of Guertie; that he gave him a check for $10; for service rendered, and then asked him to cash a check for $10; that he then went with him to Vining's second hand store and cashed the checks; that Tom Lewis then paid him $4 that he had borrowed from him.

On cross-examination the defendant was asked: "Have you ever been charged with any crime? (Objection made and sustained.)" He was then asked: "Q. Have you ever been arrested on any charge.? A. No, sir. Q. Were you not arrested in this court, the central district?" (Objected to as incompetent, irrelevant and immaterial. Objection overruled and exceptions saved.) This in itself constitutes reversible error. This question was fully considered in the case of *Slater v. United States*, 1 Okla. Cr. 275, 98 Pac. 110. In an opinion written by Presiding Judge Furman, the third syllabus reads as follows:

"For the purpose of affecting the credibility of a witness, he may be asked, on cross-examination, if he has been convicted of a felony or of any crime which involves a want of moral character; but it is improper to ask such witness if he has been indicted, arrested, or imprisoned, before conviction, for any offense whatever."

The admission of evidence in relation to the checks was clearly erroneous and prejudicial to the rights of the defendant. It would seem that this evidence was introduced for the purpose of showing that defendant had obtained money from Tom Lewis fraudulently.

Upon the subject of motive or intent, other transactions tending to prove its criminal existence, even though they may involve other offenses, may be given in evidence against the defendant, but such evidence must be so limited and restricted as to leave the jury only at liberty to use it to discover the motive actuating the defendant in the act for which he is on trial.

The palpable perjury of the two witnesses for the state should be condemned, and, in view of the character of this testimony, we think it would have been a proper exercise of the power vested in the trial court to have advised the acquittal of the defendant upon the ground that the evidence was insufficient. A conviction founded upon such testimony should not be permitted to stand. In our opinion it would be destroying the presumption which arises in favor of the innocence of the defendant and permitting the subversion of the rule which requires the es-

tablishment of guilt beyond a reasonable doubt to allow this conviction to stand.

The judgment of the county court of Pittsburg county is therefore reversed, and the cause remanded.

FURMAN, PRESIDING JUDGE, and OWEN, JUDGE, concur.