## G. C. SCHMITT v. STATE.

No. A-8750.  May 3, 1935.
Rehearing Denied May 31, 1935.
(47 Pac. [2d] 199.)

104

108

110

114

116

118

120

Ed L. Jones and John L. Ward, for appellant.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, J. (after stating the case as above).

Taking up the errors assigned in the order in which appellant presents them, the first question arises on the refusal of the trial court to give certain instructions.

No. 1 and No. 2 are both peremptory instructions to return a verdict of "not guilty."

No. 1 was asked when the state rested its case; and No. 2 was asked at the close of all the evidence.

Requested instruction No. 3 concludes as follows:

"Gentlemen of the Jury, you are further advised that if you believe from the evidence introduced in this case or if you have a reasonable doubt thereof, that the deceased or state's witnesses Hubbard or Baker, acting with the deceased took watermelons and roasting ears from the possession and premises of defendant without the consent and against the will of the defendant, then and in that event, you are instructed that said taking was wrongful and was a trespass and an injury to the defendant's property, and an offense such as would authorize him under the law of this state to use such force as was necessary to prevent the perpetration or completion of said wrongful injury to his property or larceny thereof, and trespass upon his said premises to the extent of taking the life of the party or parties perpetrating the offense, if it reasonably appeared necessary, viewed from defendant's standpoint at the time to prevent the completion of said injury and offense."

In this connection, the trial court gave instruction No. 8, which is as follows:

"No. 8. You are instructed that the taking of roasting ears and watermelons by the deceased and his companions, Hubbard and Baker, from the premises of the defendant, George Schmitt, in the maximum amount referred to in the testimony, does not constitute a felony, and said acts alone on the part of the decedent and his companions would not constitute sufficient justification, or excuse, to authorize the shooting by the defendant of any one of said persons by a deadly weapon.

"Given and excepted to by defendant.

"Thomas D. Lyons, Judge."

Counsel in their brief say:

"We contend that the killing of the deceased by the plaintiff in error was justifiable, upon the ground that it was necessary to prevent deceased and his co-conspirators from stealing and taking away the property of the plaintiff in error.

"Under the plain statutes of our state, the plaintiff in error was justified in firing upon the deceased, even as the witnesses for the state say he did, because of the fact that the said parties were stealing his property. The several statutes which are quoted below, give to the plaintiff in error this right to protect his property, and that too, without any regard to whether the act or acts, upon the part of the party slain, was of a grade of felony or misdemeanor.

"Under the authority in the case of Dickinson v. State, 3 Okla. Cr. 151, 104 Pac. 923, and many others in this state, we contend that the honorable trial court committed reversible error, as shown in this assignment, in refusing to give defendant's requested instruction No. 3 and in giving instruction No. 8."

Our Penal Code provides that homicide is justifiable when committed by any person in either of the following cases:

"First. When resisting any attempt to murder such person, or to commit any felony upon him, or upon or in any dwelling house in which such person is; or,

"Second. When committed in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress or servant, when there is a reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished." Section 2237, Statutes 1931.

Construing this section in Jackson v. State, 49 Okla. Cr. 337, 293 Pac. 567, 568, it is held:

"A person may resist a trespass on real property in his possession, where such trespass does not amount to a felony, and may eject the trespasser therefrom by the use of any reasonable force short of taking or endangering human life; but if he is unable to prevent a trespass, where no felony is attempted, by any means short of taking or endangering human life, he must suffer the trespass and seek redress at the hands of the law rather than commit homicide." And see Garrison v. State, 19 Okla. Cr. 3, 197 Pac. 517.

In the Dickinson Case cited, this court said:

"A mere trespass upon the land of another, even after the trespasser has been warned to depart and has refused, does not justify the landowner to use a dangerous or deadly weapon to resist the trespass. * * * The putting in use of a deadly weapon shows a wanton disregard of human life. Clark in his work on Criminal Law, at page 145, lays down the proposition in this terse and explicit language:

" 'A person may resist a trespass on his property, real or personal, not amounting to a felony, or removal or destruction of property not feloniously attempted, by the use of any reasonable force, short of taking or endangering life; but, if he is unable to prevent it, and there is no felony attempted, he must suffer the trespass and the

loss of property, and seek redress at the hands of the law, rather than commit homicide'."

In the case of Marshall v. State, 11 Okla. Cr. 52, 142 Pac. 1046, syllabus 2, this court said:

"A landowner is not justified in making an assault upon another with a dangerous or deadly weapon in resisting a trespass on his premises, when no felony is attempted."

This principle is as old as the common law, and is found whenever the principles of justifiable homicide are discussed.

The rule laid down in Corpus Juris is:

"An offense against property does not, in the absence of other circumstances, constitute adequate provocation to reduce an intentional homicide to manslaughter, although there is some authority to the contrary. The rule applies where the homicide was intentionally committed with a deadly weapon, although the trespass or larceny could have been prevented in no other way." 29 C. J. 1145.

Our Penal Code provides:

"A design to effect death is inferred from the fact of killing, unless the circumstances raise a reasonable doubt whether such design existed." Section 2217, Okla. St. 1931.

The presumption of law is that a person intends all the natural, probable, and usual consequences of his act; and this presumption of law will prevail unless from a consideration of all the evidence the jury entertain a reasonable doubt whether such intention existed.

The general rule is that if a man uses a deadly weapon, not in self-defense, and life is taken, he is presumed to intend the natural and necessary consequence of his own act. However, the presumption arising from the character of the weapon used is not conclusive as to intent.

If there is a conflict in the evidence or different inferences may be drawn therefrom, it is the province of the jury to weigh the evidence and determine the facts.

The irresistible inference from the testimony on the part of the state is that the killing was a felonious homicide, and we think there was sufficient evidence before the jury to justify a verdict finding the defendant guilty of murder, because according to his own voluntary statements to the officers, admissions deliberately made within an hour after he fired the fatal shot, there was no pretense or claim on his part that the shooting was done in self-defense. Considering this, together with the testimony of the witnesses for the state and the physical facts, the killing was wholly without justification.

Upon the whole case, the evidence is in direct conflict as to who was the aggressor. In this conflict of evidence it became the duty of the jury to determine which of the versions given by the witness was the true one.

As to whether the act was done with deliberation or under such sudden excitement of passion or provocation as would reduce the offense of killing from murder to manslaughter of the first degree, it was the duty of the jury to determine.

It follows that there was no error committed in overruling the motions for a directed verdict, nor in refusing to give the instructions asked for by the defendant, presenting the same theory of the case.

Without a doubt the contention made is without merit in any view of the case.

It is next contended that the defendant did not have a fair trial, by reason of the alleged misconduct of the

trial judge in making prejudicial remarks when ruling upon matters presented to him during the course of the trial, and in making remarks on his cross-examination of some of the defendant's witnesses, as shown by the record in the case, and that the judgment of conviction "should be reversed because of the prejudice of the honorable trial judge against the plaintiff in error," and because the court erred in overruling the defendant's motion for a mistrial.

Upon a careful examination of the record, we fail to find that the trial judge made any remarks which were prejudicial to the defendant. The record, however, clearly shows a course of conduct on the part of the defendant's counsel, during the course of the trial, that would have justified the court to admonish, rebuke, or censure counsel for irregularity of practice or misconduct.

It appears that a large number of frivolous objections were interposed to the evidence on the part of the state, and when the state rested, the motion for a peremptory instruction was made, which was without even the semblance of merit, a course of conduct tending to provoke some unguarded expression which might possibly violate some rule of propriety on the part of the court.

And during the progress of the trial, a motion for a mistrial based on alleged bias and prejudice, and alleged misconduct of the trial judge, was made in the presence of the jury; thus it seems that the trial judge himself was virtually placed upon trial by the defense.

We here quote with approval the language of Judge Philips, in case of Miller v. Oklahoma, 149 F. 330, 334, 79 C. C. A. 268, 9 Ann. Cas. 389:

"It is a method sometimes resorted to, as reprehensible as it ought to be infrequent, that in defenses deemed possibly desperate, for counsel by their course of conduct to so annoy and exasperate the judge as to make him, now and then, forget the pedestal on which he sits, and by retaliation display an unjudicial temper and lose his equipoise, in the expectation that thereby he may be led into the commission of some reversible error. One of the surest methods for counsel to inspire a proper dignity on the part of the court and to obtain fair treatment is by their own respectful deportment and fairness to impress the court with a belief in their intellectual honesty and sincerity, rather than by persistent contention, contradiction, and wrangling with the court, and at times injecting improper matters into the trial, invite antagonism from the court and drive it from its propriety."

In the same case, Miller v. Territory, 15 Okla. 422, 85 Pac. 239, 240, Justice Burwell speaking for the court said:

"It is the duty of trial courts to guard well their expressions, and to act with dignity and discretion, to the end that the jurors may not be influenced by anything except the evidence, and they should be left to make their own deductions therefrom. Attorneys also owe an equally high duty to the court. They should not be permitted to enjoy the benefits derived from questionable conduct unnoticed; for, if such were the case, then the services of the lawyer who acts from a high sense of duty would be unsought, and the lawyer who adopts unprofessional means would be able to render his client the more valuable service. A defendant is entitled to a fair and impartial trial; but this does not mean that the prosecution alone shall be fair, and the defendant left to take advantage of every cunning within his power. And where he, or those who represent him, with his knowledge, do wrongful acts, while engaged in his defense, which reflect discredit upon him or his witnesses, it is only just that he should suffer the consequent inferences flowing therefrom, should those facts became known to the jury."

And concluding, said:

"The court may, in its discretion, ask proper questions of witnesses for the purpose of eliciting the truth; and it is not only proper, but conditions arise sometimes wherein it becomes its absolute duty, to do so. A court should never assume the attitude of a prosecutor, nor should it indicate to the jury by its manner or the form of its questions what it thinks of the merits of the case on trial; but a case will not be reversed on this ground, except where there has been a clear abuse of judicial discretion."

Corpus Juris states the rule as follows:

"For the purpose of eliciting evidence which has not otherwise been brought out, it is proper for the judge to put questions to a witness either on his examination in chief or on cross-examination, and where anything material has been omitted, it is sometimes his duty to examine a witness. The judge may recall and examine a witness in order to supply an omission of proof on a material point. But he must conduct his examination in such a manner as to impress the jury with the idea that he is entirely impartial, and he must also conduct the examination in such a way as not to indicate his opinion on the merits or any doubt as to the credibility of the witness." 16 C. J. 831.

In the case of Calloway v. State, 38 Okla. Cr. 418, 262 Pac. 696, 698, this court said:

"It is not every improper remark of a trial court that will justify a reversal. If the remarks are such as might reasonably influence the jury against the defendant, a new trial should be granted; but, if after a full consideration of the entire record, it is clear that the verdict is right, and that, even if the remark had not been made, the jury could not have reasonably returned a different verdict, the judgment will be affirmed."

In Jones v. State, 20 Okla. Cr. 154, 201 Pac. 664, 672, it is said:

"The remarks of the court were unfortunate, but the attitude of the attorneys was in some measure responsible

for this. The defendant and his attorneys cannot be heard to complain of matters brought on by their own wrong. If the rule were otherwise, any defendant in a criminal case would have it within his power to inject reversible error into his case and so defeat the ends of justice."

And see Nix v. State, 20 Okla. Cr. 373, 202 Pac. 1042, 26 A. L. R. 1053.

In the case of Lacy v. State, 33 Okla. Cr. 161, 242 Pac. 296, this court said:

"A trial court is not required to be a mere umpire, but in the interests of justice, and to see that both sides have a fair and impartial trial, may interrogate a witness but in so doing must refrain from allowing his action or words to indicate to the jury his opinion of the guilt or innocence of the defendant or the credibility of any witness."

In support of this contention counsel cite and rely upon the cases of Harrison v. State, 11 Okla. Cr. 14, 141 Pac. 236, and Jones v. State, 20 Okla. Cr. 233, 202 Pac. 187.

A careful examination of the record leads to the conclusion that the alleged misconduct complained of in this case does not fall within the condemnation of this court as expressed in the cases cited.

In both of these cases the witnesses were examined and cross-examined by the trial court in a way which clearly indicated that the court discredited their testimony, and there could be no doubt that the conduct of the court constituted comment upon the testimony of the witnesses, and was an abuse of judicial discretion that was highly prejudicial to the substantial rights of the accused.

Upon the record before us, we are unable to say that the judge who tried this case transgressed the proper limits of judicial discretion in his examination of certain wit-

nesses on his own motion, with a view of eliciting certain facts not fully brought out by questions of the respective counsel.

Our conclusion is that the conduct and action of the trial court in the foregoing respects in no way invaded the right of the defendant to a fair trial.

A number of errors are assigned on rulings of the court in the admission and exclusion of testimony. We have examined and considered the same and find in them no reversible error. In this connection it may be observed that the trial court admitted evidence to sustain the defendant's reputation for truth and veracity, and placed no limit upon the number of witnesses called by him to corroborate his own testimony, by testifying that his general reputation for truth and veracity was good.

It was held by this court in Kirby v. State, 25 Okla. Cr. 330, 220 Pac. 74, 33 A. L. R. 1212, that:

"When a defendant elects to testify in his own behalf, he occupies a double position. As a defendant his character cannot be attacked by the state; as a witness he puts his credibility at issue like any other witness." Syl. 3.

"In a criminal trial where the defendant testifies as a witness in his own behalf and is not impeached, and his credibility is not attacked, except by contradiction of his testimony by other witnesses, evidence sustaining his reputation for truth and veracity is not admissible." Syl. 5.

And see Wigmore (2d Ed.) vol. 2, par. 1104.

That rule is the logical result of the other one, that the law presumes every person to be reputed truthful until evidence has been adduced to the contrary; therefore, there is no reason why time should be spent in proving that which may be assumed to exist.

134

Exception to the refusal of the court to give certain instructions asked for by the defendant, and exceptions taken to the instructions given by the court, are called to our attention and assigned as error.

We have carefully read and considered the instructions given by the court, together with the instructions requested and refused, and our conclusion is that those given, considered as a whole, fully covered, under the evidence, every phase of the case, and included all that was properly contained in those refused.

Upon the whole record, we find no errors which would authorize this court to reverse the conviction. The punishment fixed by the jury is tempered with mercy, as the minimum punishment allowed by law is fixed as the term of imprisonment.

Our conclusion is that the defendant had a fair and impartial trial, with every right accorded to him that the law justifies or requires.

The judgment of the trial court is, therefore, affirmed.

DAVENPORT, P. J., and EDWARDS, J., concurring.