# STANLEY et al. v. STATE.

No. A-11299. March 28, 1951.

Rehearing Denied May 16, 1951.

(230 P. 2d 738.)

Steele & Boatman, Okmulgee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J. The plaintiffs in error, Wilson Stanley and Dan Martin, who will hereinafter be referred to as defendants, were charged by information filed in the district court of Okmulgee county for the crime of larceny of domestic animals; were tried before a jury, convicted, and were each sentenced

to serve a term of eight years in the State Penitentiary. Appeal has been duly perfected to this court.

The evidence on behalf of the state developed that one Frank Nash, a colored farmer living in Creek county, eight miles west of Beggs, along about April 1, 1948, had a light cream colored Jersey cow, three years old, stray from his farm; that there was a "W" brand on her right hip, that she had a "little knot" or swollen place on the knee of her right front leg; and that she had short horns, one straight out and one curving down a little.

Nash testified that in June, 1948, he went with a deputy sheriff to the defendant Stanley's farm and there he found his cow; that a man named Belford had advised him that the cow in question might be on the place where found. He further testified that the defendant claimed the cow as his own, that he went back the second time to see the cow, that being in September, and she was a little fleshier at that time. Nash further testified that he purchased the cow in the summer of 1947 and she was already branded. He stated that he did not give anyone permission to take his cow and that he signed a complaint against the defendants after he viewed the cow in question.

R. A. Wheeler testified that he lived five and a half miles west, and a mile south of Beggs, in Okmulgee county, from January to June, 1948, farming; that in April or May a stray yellow Jersey cow came on his place and took up with seven head of cattle he had; that she had a "W" brand on her right hip and had short horns; that he told one Charley Aldrich that if he learned of anyone having a cow missing that he had a stray on his place; that he described the cow to Mr. Aldrich; that thereafter Mr. Wilson Stanley and Mr. Dan Martin, the defendants, came out, and Mr. Stanley stated: "He had seen Charley Aldrich who told him about the cow being at my place; he said he had lost a cow answering that description, he described the cow, said it was his." Witness further testified that the defendants thereafter viewed the cow and that both stated it was Wilson Stanley's cow; that they loaded the cow in Stanley's pickup truck, and that Sheriff Kirby was out to see him the next day about the cow. Witness had not seen the cow since the defendants took her from his place.

Slew Thompson testified that he lived ten miles northwest of Beggs in Okmulgee county; that he lived about two and a half miles from Frank Nash and was engaged in farming and had a pasture that joined with one operated by Nash. That in January, 1948, a yellow Jersey cow with a "W" brand on her right hip and a knot on her front right knee got into his pasture and fed with his cows for two weeks or ten days; that he saw her two or three times while she was feeding with his cows; that he thought that she had been dehorned and was a muley; that later a deputy sheriff took him to Wilson Stanley's pasture near Nuyaka and he identified the cow that had been on his place in January.

Jim Gleason testified that he had worked for Slew Thompson for ten years and that in the winter of 1948 a fawn-colored Jersey with a "W" brand on her right hip, with a knot on a knee, and horns about ten inches long, got in Mr. Thompson's pasture. That he saw her every day for ten days to two weeks. That Frank Nash, who owned an adjoining pasture came and claimed the cow and got her; that the next time witness saw this cow she was in a pasture west of Okmulgee; that a deputy sheriff took him there to see if he could identify the cow as the one that had gotten in Mr. Thompson's pasture and was removed by Nash. Witness swore the cow in the Stanley pasture to be the cow he had known as Nash's cow.

Sheriff Jim Kirby testified that he investigated the case of the missing cow of Frank Nash; that he located the cow described on Wilson Stanley's farm and told Stanley not to dispose of her.

The state produced three additional witnesses, D. M. Sadler, Booker T. Washington, and Jake Gooden to show that the defendants had a system of finding out about stray cattle and claiming all strays they could learn about, and attempted to establish such proposition by proving another instance happening about the same time of the Nash matter. The court permitted the witnesses to testify, reserving his ruling. Thereafter, counsel for the defendants moved that the court strike from the record the entire testimony of the three witnesses, Sadler, Washington and Gooden. After agreement out of the presence of the jury, the jury was returned into the jury box and the court announced: "The motion of the defendants with reference to striking the testimony of the witnesses named is sustained, and the jury will not consider the testimony of those last three witnesses with reference to the other cow."

We conclude that the ruling of the court was correct. The question of whether or not the defendants were prejudiced in spite of the court's instruction to the jury to disregard the testimony of the three witnesses in question will be considered later.

At this point the state rested and the defendants interposed a demurrer to the evidence of the state, which was by the court overruled.

Neither of the defendants testified, but did offer as witnesses Lance Duncan, Barney Douglas and Harry Ledbetter.

Lance Duncan stated that he lived eight miles south of Nuyaka, was engaged in farming and had been since 1945; that he was familiar with the cow in controversy, having purchased her at a sale in Henryetta in April or May, 1945, when the animal was just a calf four or five months old, and in his words, "wouldn't have weighed much over a hundred, was a pot-bellied stunt." He stated that he sold the animal in February, 1947, to Wilson Stanley for $80. He then identified a check dated Feb. 2, 1947, as one that Mr. Stanley had given him for the cow. Counsel thereupon offered the check in evidence, and the court remarked: "I am going to let it go in for what it is worth. It doesn't say it is for a cow. Let it be considered for what it is worth. It is admitted."

Counsel for the defendants excepted to the remarks of the court as commenting on the evidence.

Witness Duncan stated that defendant Stanley did not immediately take the animal, but she stayed in his pasture quite a while. Witness stated that after he purchased the Jersey calf she was in his horse lot and her right front knee became injured by being kicked by a horse. He further stated that she had small Jersey horns. He further testified that he had recently seen the animal and noticed that her right horn had been slit.

On cross-examination witness admitted that since 1945 he had lived on a farm belonging to the defendant Stanley.

Barney Douglas, a colored farmer living at Nuyaka, testified that in 1947 he saw the cow involved, in witness Lance Duncan's pasture. He was asked: "What particular occasion did you have to see the animal? A. They were in the pasture by the side of the road; he got me to move them to another pasture, down to the bottoms." He stated that he last saw the animal at Duncan's in June, 1947; that he had recently seen the cow in the Wilson Stanley pasture, the only difference in her appearance being that she had one ear slit.

Harry Ledbetter testified that he lived two miles south, a mile east and three miles south of Nuyaka; that in November, 1947, he lived over near Okfuskee; and that he was acquainted with the defendant Wilson Stanley at that time, and about the middle of November, 1947, helped him brand about 25 head of cattle. He further testified that he had recently seen the cow in question in the prosecution and that he remembered when she was branded; that he put the brand on her, a "W" on the right hip. He stated that up to that time she had no brands; that in branding her they injured one horn, "slipped the horn part off inside, off the stub." He further testified that the defendant had about 25 head branded preparatory to moving them to a bottom pasture north of Nuyaka; that the animal in question had a knot on her right knee. That the next time he saw the cow after she was branded was in June of 1948, when he saw her in Mr. Stanley's pasture. That he was sure she was the same cow. He estimated that the cow weighed 600 pounds in November, 1947, when he branded her. He stated that the cow belonged to Wilson Stanley when he branded her and not to Lance Duncan, and that Mr. Stanley had possessed the cow for about a month or two when he branded her. He did not testify that the Stanley brand was a "W". There was no explanation as to this.

This concluded the evidence. The action of the jury has previously been indicated.

Counsel for the defendants in due time filed a motion for new trial, and also a supplemental motion for new trial. The latter motion was based on the allegation of newly discovered evidence. Counsel attached to the motion an affidavit setting out that following the convictions on February 17, 1949, and on March 7, 1949, he for the first time found out that the county attorney had caused the arrest of state's witness Nash following his testifying at the trial of the defendants, being accused of perjury, and that on March 9, 1949, he learned of the arrest of state's witnesses Washington and Gooden, who, though later released, were also accused of perjury by the county attorney.

The county attorney filed a reply to the supplemental motion for new trial, in which it was admitted that said witnesses in question had been held for questioning for failure to testify fully and completely and for failure to testify to certain matters previously recited to the sheriff and county attorney, and that the investigation developed that Lance Duncan and Barney Douglas had testified falsely for the defendant, and they had subsequently been bound over on charges of perjury. Attached among affidavits from witnesses whose testimony had been stricken was the signed statement of Frank Nash, dated February 18, 1947, and reading:

"This statement is given to Charles E. Steele, Assistant County Attorney and K. D. Bailey, County Attorney of Okmulgee County, State of Oklahoma, and it contains all of the true facts and circumstances that I know about Wilson Stanley and Dan Martin and a Jersey cow which belonged to me.

"Shortly after the preliminary hearing at H. D. Reed's Court, I and my son Asly went to Wilson Stanley's house in a Plymouth car. I went to ask Mr. Stanley to give me my yellow jersey cow. I talked to Mr. Stanley and he told me, 'you come back here tomorrow, Sunday morning, and I'll have your cow here at the house for you.'

"The next day, I and Ruffin Wells, and Gideon Goldsmith went over to Wilson Stanley's house to get the cow. When we got there, Wilson wasn't there, and while we were waiting there, Dan Martin came and talked with Ruffin Wells, and me, and said, 'Wilson is down in the pasture, but I know he'll be here by 12:00 o'clock.' Pretty soon Mr. Stanley came, and he asked me what I wanted, and I told him I had come for my cow. He said that he hadn't had time to get her out of the pasture, and that his men were all in town, and that he would

bring my cow over to my house on Wednesday in his truck. He never did bring the cow to me, and I guess he's still got her.

"I further wish to tell of the time that I was offered a bribe to let Wilson Stanley and Dan Martin 'off easy', and I swear that this statement is true.

"Before the preliminary hearing at H. D. Reed's court, my wife and I were awakened one night about 11:00 P. M. I went to the door and saw Wilson Lewis there, and he said he wanted to talk to me. I pulled on my pants and shoes and we went out onto the porch, and he told me, 'Wilson Stanley sent me to tell you that he'd pay one hundred dollars ($100.00) if you would make it light on Wilson Stanley and Dan Martin.' I told him, 'When do I get that hundred dollars ($100.00) ?', and Willie Lewis told me, 'You will get it after the trial is over and they let Wilson Stanley and Dan Martin loose.' I asked Lewis, 'Count [could] I depend on it,' and he said, 'Yes, you can depend on what Wilson Stanley says, he is all right, and will do just what he sayd [says] he will do.'

"I didn't talk to Lewis any more, and I didn't get the money. Another reason why I didn't want to testify as to all I knew at the trial on February 17, 1949, was that I was scared of being burned out, because I knew that Dan Martin would do it if I didn't do what they told me. I remember some conversation with Ruffin Wells and some others whom I can't remember now, where they were talking about some one being burned out if Wilson Stanley and Dan Martin were stuck on the charge of stealing cows. I got the idea that they meant me, but they didn't mention any names.

"Shortly after I lost my cow, I think it was the 15th of April, 1948, Jake Gooden and Charlie Aldridge came to my house, and Jake Gooden was trying to buy some royalty off of me, and Charlie Aldridge was trying to buy some hogs of mine. While they were there, I told Charlie Aldridge about losing my yellow jersey cow, and I described the cow to him, and asked him to look for her as he went around the country; he said he would.

"I Later found out that Charlie Aldridge told Wilson Stanley where that yellow jersey of mine was, at R. A. Wheeler's and Wilson and Dan got her and claimed it belonged to Wilson Stanley.

"This statement is two pages long.

(Signed)     Frank Nash"

[3 witnesses]

For reversal counsel contends that the court erred in permitting and indulging the county attorney in improper and prejudicial conduct. Specifically it is alleged that in examining the prosecuting witness. Frank Nash, said witness was cross-examined and browbeaten, an example being in the words of counsel: "Where the county attorney asked the following questions: 'Q. At that time, did you identify the cow that you lost?' And after objection the county attorney in a rather threatening manner asked: 'Q. Did you or did you not?' "

There is nothing in the record to show the bearing, manner or deportment of the county attorney other than as disclosed by the record in the case, which we have carefully studied. We do not find that it discloses anything about the physical manner and demeanor of the county attorney, and we therefore conclude that it was not unduly out of line or prejudicial to the rights of defendant, or a remonstrance would have been made, or the trial court would have admonished the county attorney. It is obvious from reading the testimony of the prosecuting witness Frank Nash that, though he identified his cow in possession of the defendant Wilson Stanley, he was either not a very bright witness, or was a rather reluctant and unwilling witness. The signed statement of this witness attached to the state's reply to defendant's supplemental motion for new trial by reason of newly discovered evidence, reasonably explains his reluctance. He did not attempt to retract any of his testimony at time of trial or claim

that he had given false testimony, but did admit evading the recital of facts that would have been most damaging to the defendants. Thus the defendants were materially favored.

Concerning the complaint that the county attorney continually cross-examined, harrassed and browbeat state's witnesses Booker T. Washington and Jake Gooden, counsel for defendants moved that the entire testimony of these witnesses be stricken from the record, and the court, when the evidence of the witnesses was concluded, heard argument out of the presence of the jury and thereafter the jury was recalled and the court struck the evidence of the two witnesses in question, as well as that of D. M. Sadler, and instructed the jury not to consider same, as the testimony concerned a black, white faced heifer not involved in the case on trial. The testimony of these witnesses did not develop into anything that would appear to have been damaging to the defendants.

It seemed to be the purpose of the county attorney to show the motive and the system, plan or scheme by which the defendants were operating in attempting to gain possession of cows which had been taken up as estrays in the community where they resided, but the two witnesses in question did not testify as the county attorney apparently thought they would. In Rogers v. State, 9 Okla. Cr. 277, 131 P. 941, 942, this court held:

"The admission of testimony which is of doubtful competency, and which is afterwards by the court excluded out of an abundance of caution, is not error sufficiently prejudicial to justify a reversal."

And in Reeves v. State, 40 Okla. Cr. 385, 269 P. 391:

"A judgment will not be reversed on appeal on the ground of improper introduction of evidence, where the court sustains the objection of the defendant to the evidence and directs the jury not to consider the same, unless, in the opinion of the court after an examination of the entire record, it appears there has probably been a miscarriage of justice or a violation of the constitutional rights guaranteed to the defendant."

The court properly struck this testimony.

And as stated by this court in the case of Crowell v. State, 42 Okla. Cr. 392, 276 P. 518:

"A conviction will not be reversed for alleged misconduct of the prosecuting attorney, unless this court can see that the prosecuting attorney was not only guilty of misconduct, but that such misconduct might in some degree have influenced the verdict of the jury."

It is contended that by reason of the county attorney detaining his witnesses Nash, Washington and Gooden in jail after they testified on February 17, 1949, for investigation for perjury, under Smith v. State, 3 Okla. Cr. 629, 108 P. 418, the case should be reversed. The record does not disclose that the witnesses were charged with perjury, but it does disclose, from their statements that they did fail to detail all that they knew about the matters about which they were questioned—evidence that would have been damaging to the defendants, but the evidence of Washington and Gooden, as stated, was stricken. The investigation in question did result in the defendants' witnesses, Lance Duncan and Barney Douglas, being bound over on charges of perjury.

There is nothing in the record to show that the state's witness Frank Nash testified falsely, but, on the other hand, as stated, it does show that he failed to reveal all the damaging and pertinent matters against defendants that he could have told.

Clearly, the jury did not know anything about any of the witnesses being detained, or know anything about perjury charges being filed against two of defendants' witnesses. From the supplemental motion for new trial we conclude that counsel did not even know it until after the trial, and hence the fact of detention or arrest could not have influenced the jurors in the verdict rendered. So Reed v. State, 5 Okla. Cr. 365, 114 P. 1114, would not be applicable, and counsel for defendants does not so contend.

It is next contended, "that the court erred in his comment on the weight of the evidence and in actively participating in the trial of the case by examining witnesses."

The defendants' defense was that the cow in question belonged to the defendant Wilson Stanley, and that he purchased her from witness Lance Duncan. Duncan testified that some time in April or May, 1945, he purchased the cow in question at a sale in Henryetta; that in February, 1947, he sold her to the defendant Stanley, and took his check in the sum of $80 in payment for the cow. After being marked and identified, the check was offered in evidence. The record reads:

"Mr. Boatman: I made an offer, if the court please. Defendants offer in evidence defendants' Exhibit I. The Court: I am going to let it go in for what it is worth. It doesn't say it is for a cow. Let it be considered for what it is worth. It is admitted. Mr. Boatman: Exceptions to the remarks of the court commenting on the evidence."

While we do not approve the comments of the trial court, we first made a study of the entire record in this case, and thereafter re-examined it in light of the briefs of the defendants and of the state, and from such study we do not consider that the statements complained of were so grossly improper as to have prevented the accused from having a fair trial. Stacey v. State, 79 Okla. Cr. 417, 155 P. 2d 736; Calloway v. State, 38 Okla. Cr. 418, 262 P. 696.

The court did participate in a few instances in the questioning of the state's witness Booker T. Washington, whose testimony, as heretofore stated, was finally stricken, and the jury admonished not to consider the same. It is evident that the witness was being evasive and was reluctant, and the trial judge appears to have been simply seeking the truth, and that he did not by such questioning indicate to the jury his opinion as to the guilt or innocence of the defendants. At most there was apparently justifiable impatience.

In the case of Schmitt v. State, 57 Okla. Cr. 102, 47 P. 2d 199, 200, this court said:

"A trial court is not required to be a mere umpire, but in the interest of justice, and to see that both sides have a fair and impartial trial, may interrogate a witness; but in so doing must refrain from allowing his action or words to indicate to the jury his opinion of the guilt or innocence of the defendant or the credibility of any witness.

"A trial judge has the right, in the exercise of his discretion, to ask of any witness such questions as will tend to elicit the truth, and so long as the judge does not, by his questions or conduct, indicate his views as to the matters at issue, a defendant will not be heard to complain of any question asked by him which is reasonably calculated to elicit the truth."

And in Luther v. State, 80 Okla. Cr. 252, 158 P. 2d 481, 482, we further held:

"Where it is contended that the trial court continually asks questions of witnesses, and made suggestions as to the manner of procedure by the County Attorney, the entire record will be considered to determine whether the conduct of the court was so improper as to prevent the accused from having a fair trial,

and in so considering the entire record the court will consider whether justice demands that the judgment and sentence should be modified."

Finally, it is urged that the trial court erred in giving two instructions over the objections and exceptions of the defendants. These instructions cover the matter of recently stolen property and are tacitly admitted by counsel for defendants to correctly state the law as abstract propositions, but it is contended that they could not apply to the within case as the defendant Stanley claimed title to the cow in question and that the evidence did not justify the two instructions. From a consideration of the evidence as a whole, we conclude that the court did not err in giving the instructions in question.

Also defendants assert that the court erred in not giving two instructions submitted and covering their theory of the case. The requested instructions read:

"Gentlemen of the jury, in this case the defendants have introduced before you, as a part of their defense, evidence attempting to prove that they took the cow in question, believing it to be the property of defendant, Wilson Stanley, and still believe it to be the property of defendant, Wilson Stanley. In this connection you are instructed that if you believe from the evidence introduced, before you, or have a reasonable doubt in your mind thereof, that at the time of taking said animal said defendants did, in good faith, believe her to be the property of defendant Wilson Stanley, then defendants are not guilty of larceny, even though you should further believe, beyond a reasonable doubt, that defendants are mistaken and that said property does not actually belong to defendant Wilson Stanley, and should you so find by the evidence, you should return a verdict of not guilty as to both of said defendants.

"Gentlemen of the jury, in this case the State of Oklahoma has alleged in the information that defendants took the animal in question by fraud and stealth and with unlawful and felonious intent to deprive the owner thereof. In this connection you are instructed that although you may believe the animal in question to be the property of Frank Nash, unless you further find and believe, beyond a reasonable doubt, that the defendants knew said animal not to be the property of said defendant, Wilson Stanley, at the time of said taking, then you cannot find the defendants guilty and you should so say by your verdict and acquit them."

While the court refused to give the two requested instructions, the court did give an instruction based on defendants' evidence, as follows:

"Instruction No. 8. If the jury find and believe from the evidence, that the defendants took and carried away said Jersey cow, of the bovine species, believing in good faith that said Jersey cow was the property of the defendants, or one of them, or if you have a reasonable doubt as to whether said defendants took the said cow believing it belonged to them or one of them, then, it is your duty to give the defendants the benefit of such doubt and acquit them."

We conclude the above instruction substantially covered the defendants' theory as covered by the two requested instructions. While the defendants' witness Lance Duncan testified that he purchased the cow in question as a heifer and later sold her to the defendant Stanley, the undisputed evidence is that the two defendants did remove this cow from the farm of R. A. Wheeler in June, 1948, where she had been for a number of weeks; that Wheeler had been trying to locate the owner and had given one Charley Aldrich the description and that Aldrich had thereafter given the defendants the description and they had then appeared at the Wheeler farm, given the description and obtained the cow. Aldrich was not used by the defendants to show that they first described a missing cow that coincided with the description given him by Wheeler, and neither defendant so testified, or testified at all.

In addition to the identification of the cow in question by Frank Nash as his property, Slew Thompson who owned a pasture adjoining the Nash pasture identified the cow as belonging to Nash. He stated that this animal had gotten in his pasture in 1948 and fed with his cattle for about two weeks; that a deputy sheriff had taken him to the Wilson Stanley farm and that the animal in question was then in the Stanley pasture and was the same animal that had strayed on his place. And Jim Gleason, who worked for Thompson, testified that he saw the cow every day while on the Thompson farm, and that Frank Nash came and got her and claimed her and that he, along with a deputy sheriff, had viewed the cow on the Wilson Stanley farm, and that she was the identical cow that had strayed on the Thompson farm and that Frank Nash had called for and obtained her as his stray.

While there is merit in counsel's argument that the instructions given tend to assume as a fact that the cow in question was a stolen cow when the defendants through Lance Duncan claimed actual title to be in the defendant Stanley, yet no clearer instruction on this point was submitted and the two instructions actually submitted were substantially covered by instruction No. 8 given, and under the instructions given the defendants could have been acquitted if the jury did not believe, or had a reasonable doubt that defendants stole the cow in question, or if defendants believed the admitted taking (there being no denial of the removal from the Wheeler farm) was in good faith in the belief that the cow belonged to the defendant Stanley.

In the case of Haithcock v. State, 63 Okla. Cr. 276, 74 P. 2d 641, we said:

"It is not error for the trial court to refuse to give requested instructions if the law covered by the requested instructions is fully and fairly covered by the court's general instructions."

Viewing the record as a whole, we find that there is abundant evidence and sufficient circumstances to support the verdict of the jury in the case. We do not find that there has been a miscarriage of justice, or a violation of the constitutional rights guaranteed to the defendants. If the signed statements of the state's witnesses made a part of the state's reply to the defendants' supplemental motion for new trial are true, it is apparent that the sentence assessed was a light one. However, solely from the evidence actually introduced at the trial, and giving the defendants the benefit of every doubt, it is possible that the stricken evidence might, in spite of the instructions of the court to disregard the same, have influenced the jury in the amount of the punishment assessed. There is no way of knowing. But in the interest of fairness, and exercising the authority conferred by 22 O.S.A. § 1066, it is the opinion of this court that the punishment assessed should be modified from a term of eight years in the penitentiary for each defendant, to a term of three years for each defendant.

The punishment assessed as to each defendant is therefore modified from a term of eight years to a term of three years in the State Penitentiary for each of said defendants, and as so modified, the judgment and sentence of the district court of Okmulgee county is affirmed.

BRETT, P. J., and JONES, J., concur.