Wayne HATFIELD and Taylor Hatfield, Plaintiffs in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12575.

Criminal Court of Appeals of Oklahoma.

April 23, 1958.

Rehearing Denied May 28, 1958.

Thad L. Klutts, Oklahoma City, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Wayne Hatfield and Taylor Hatfield have appealed from a judgment entered by the county court of Grant County wherein they were jointly tried before a jury on a charge of assault and battery on one Clarence Aebi, were found guilty, but the jury being unable to agree upon the penalty, left that to the court, who fixed punishment for each de-

fendant at fifteen days imprisonment in the county jail, and to pay a fine of $50.

Plaintiffs in error, hereinafter referred to as defendants, had been together with their father, Burns Hatfield, jointly charged with the offense in question, and Burns Hatfield had also been found guilty and the court had assessed his punishment at thirty days imprisonment and to pay a fine of $50, but had suspended the sentence, and Burns Hatfield is not a party to this appeal.

The charging part of the information reads:

"* * * that on or about the 14th day of August A.D. 1957, in said county of Grant and state of Oklahoma, one Burns Hartfield, Wayne Hatfield and Taylor Hatfield did then and there, unlawfully, wrongfully, and intentionally make an assault in and upon one Clarence Aebi with their fists and did then and there and thereby beat, bruise, wound and injure the said Clarence Aebi with the unlawful and wrongful intent to do bodily harm and injury to him, the said Clarence Aebi."

For reversal, counsel in brief sets forth two propositions: (1) That the judgment is excessive and contrary to the law and the evidence; and (2) That there were prejudicial errors occurring during the course of the trial which affected materially the rights of the defendants.

It will be necessary to summarize pertinent evidence of both the State and the defendants.

Clarence Aebi, the prosecuting witness, testified that he was a farmer and lived ten miles west and three miles south of Medford, and had lived in the vicinity since 1943. He said that on the morning of August 14, 1957, he was working on his tractor, which was partly in the road that ran east and west in front of his home; that the front end of the tractor was in the bar ditch on the south side of the road and the rear end extended to near the center of the road. He said there was twelve to fifteen feet space between the rear of his tractor and the bar ditch on the north

side of the road. He said that the main frame of his tractor had broken and he had to leave the tractor at the point in question and the day before he had the frame welded together, and on the 14th he and a young son and nephew were bolting the parts on the tractor.

Witness said there had been no traffic on the road the morning of August 14, except that the defendant Taylor Hatfield had passed in a car driving west, and after a time came back driving east; that he did not appear to have any difficulty in driving past the tractor of witness. A few minutes after this, while witness and his help were busy putting the tractor together, he said that he looked up and saw Mr. Burns Hatfield and one of his sons, Wayne, in a pickup, and following the pickup he saw the other son, Taylor, driving a tractor. He said that Burns Hatfield got out of the pickup and rushed up to where witness was working on the tractor and said, "This is going to cost you", and said "You're blocking the road", and that he told Burns, "I'm broke down", and that Burns said, "We're going to move this tractor", and that witness advised the defendants that he would call the sheriff, and asked his wife to go in the house and phone the sheriff; that she could not get the sheriff the first time as the line was busy, but did eventually get him. He asked the defendants not to touch his property until the sheriff arrived, but Burns Hatfield started to throwing things into the weeds. Said witness:

"I had a pan of bolts and stuff setting back of the tractor—small parts and stuff. He picked that up and started to throw it, and I asked him not to throw it. I told him there was stuff in there I couldn't find to put the tractor back together with and he carried it on around and by that time I thought we'd go around and get it. I walked around to have him—I thought instead of him throwing it, I'd just let him hand it to me. I walked around the tractor back on the other side and by the time I got over there, he just up and heaved it. And I said, 'No, don't

throw that—give it to me.' He just up and throwed it. And I was about to step around behind him at that time when he turned around why—he started coming at me this way. I grabbed a-hold of him to keep him off of me, and then gave him a push. He stumbled over this pipe that I had through the tractor and he went down. From then on, that was it. * * *

"A. Well, I reached up to stop him from getting a-hold of me—that's what I thought he was going to do anyhow, he come back clawing at me and when I pushed him down, his boy Taylor came up on the tractor in the meantime—he hadn't gotten there yet when this first started and the first thing I knowed I was on the ground with all three people on top of me. Q. You say all three people. Now what three people? A. Burns, Wayne and Taylor Hatfield. Q. Then what occurred? You were on the ground. They were on top of you. Then what occurred, Clarence? A. Well, I was trying to get up from there some way, and I didn't know how I was going to do it."

Witness further testified that both Wayne and Taylor Hatfield jumped on him, that one had him by the feet and one by the neck, choking him, and one hit him, and that he was jerked down. He said they finally let him go, but that he just lay there for a while trying to get his breath. He said that the side of his face had been scratched and skinned, and that the left side of his jaw was very sore and badly swollen; that he had a blood clot on the jaw and that he had to go to a doctor who gave him a shot of some kind to reduce the clot.

Witness said that he had nothing in his hands when the altercation started, but when pulled to the ground that he started to lift a jack handle to protect himself, and the defendants took the jack handle away from him and threw it away. He said that Taylor Hatfield hit him at the time they took the jack handle. Said he:

"I looked like I had an egg on both sides of my face. It was very sore. I couldn't open my jaw—could barely open my mouth, it hurt to that effect."

Alberta Aebi, wife of Clarence Aebi, testified that she was a housewife and school teacher, and testified substantially as her husband, and said that she had known Burns Hatfield since she was a small girl, and tried to reason with him but that he would not listen and that the defendant Taylor Hatfield called her a vile name, which we omit, and told her to go back into the house.

Harry Aebi, fourteen year old nephew of Clarence Aebi, testified that he was helping his uncle put a broken-down tractor together on August 14, 1957, and testified substantially as his uncle as to early events. As to the altercation, he testified:

"A. They came back with this pickup and tractor and Burns jumped out of the pickup towards us before the truck stopped and run over to the tractor and said he was going to move it out of the way, and they went to— Clarence told them he was going to call the sheriff and they wanted it that way. And they started throwing parts around and Clarence told him not to throw them around, and he tried to stop him, and they got in a fight. * * Well, Clarence grabbed hold Burns and pushed him back and he tripped over a pipe and the two boys jumped on Clarence. That's when the fight started—all of them piled on Clarence. * * * Well, one was a-holding his feet down, one of them was a-hold' of his neck and one of them was a-hitting him."

He said defendants had Clarence down on the ground twice. That Mrs. Aebi finally got the sheriff but that defendants left before the sheriff arrived.

Frank Aebi, fourteen year old son of Clarence Aebi, testified that he was helping his father put his tractor together on August 14, 1957 when the Hatfields got in a fight with his father. His testimony was

substantially as that of his father. As to his father's injuries, he said:

"Well, he had blood all over his clothes and on his shirt especially and on his face, and he had a big blood clot—that's what the doctor called it —on his face here, and he had some scratches here and something was the matter with his neck. I don't know what that was—I think it was throwed out of place."

On cross-examination Frank said that they began work on the tractor about 6:30 in the morning.

Lauren Mills, Sheriff of Grant County, testified to being called out to the Aebi home on August 14, 1957 concerning a disturbance that occurred in the roadway about 50 or 60 feet from the driveway of the home. He said that he found a tractor sitting south of the main portion of the travelled road that ran east and west; that the tractor was headed south and was possibly two and a half to three feet from the center of the road, and that better than half the roadway was left to travel. He said that he had no difficulty in driving his car past the tractor. He said that he saw Mr. Aebi and that he was covered with blood and dirt, and was pretty well shaken up.

Floyd Shafer testified that on August 13, 1957 he had found the Aebi tractor broken half in two and that it was not practical to move it, and he worked from 9:30 or 10:00 o'clock in the morning until after dark welding it together, and that it extended a little into the travelled portion of the roadway.

The defense was by the court permitted to recall the prosecuting witness, Clarence Aebi, for further cross-examination, as follows:

"Q. That morning I believe you had two tractors in the road, is that right? A. Yes, sir, I did for a little while. Q. The one—the Hatfield boy drove by there were two tractors there—is that right?—when he first came by? A. When he first came

by, my one tractor was—we had the other tractor out there hooked on to the back end of the other one to push the two together. And when he came by the first time the tractor—one tractor, had just pushed it up and put one bolt in it to hold it and had moved the tractor back and it was sitting back along the north side of—along the fence."

Witness further testified that when the defendant Taylor Hatfield first went by the morning of the incident, that he had this second tractor in the road to push the broken-down tractor together with but that it was moved back to the house. He said that he had told no one that the second tractor had been in the road at the time indicated because no one had asked him.

This closed the evidence for the State, and defendant's demurrer thereto was overruled, and we find no error in this regard.

For the defense, Taylor Hatfield testified that he lived thirteen miles west and two miles south of Medford and had lived there fourteen months, and was engaged in farming with his father and brother. He said that the early morning of August 14, 1957 he had occasion to use a public road passing the Clarence Aebi farm home; that it was a little narrow road and that Aebi had a lot of things piled on his side of the road, such as some railroad ties and that parts of a tractor were scattered everywhere. He said that as he drove west it was all he could do to get by in his pickup. He said at the time one tractor was sitting out in the road a little ways, and another was directly behind it, sitting clear across the road, and that there were some fallen trees on the ground paralelling the road on the north side, and that the limbs scraped his pickup as he drove past.

Witness said that he came back to the Aebi place the second time the morning in question, that his father Burns Hatfield and brother Wayne preceded him

in the pickup and that he followed, driving a tractor. He stated on cross-examination that the purpose of bringing the tractor was "to move that tractor" out of the road so they could get along. Witness admitted that when he got back the second time Aebi had moved the second tractor out of the roadway. Witness would not say that he had asked or planned to ask Mr. Aebi to move his things out of the road, but said:

"Mr. Aebi won't move anything for me out of the road. He run me out of the road before. He drove the school bus. I had to get out of the road several times when he came along. I don't know whether he drove other people this way or not, but he done me that way a few times. He done me that way once before. He blocked the road and I got stuck. Q. But it wasn't necessary—you've already testified you did get by there twice that morning. A. I could just barely get along. Q. I didn't ask that. You did—did you go by there twice that morning? A. I could just barely get by."

Witness as to the facts of the altercation in question said that his dad and brother Wayne were some distance ahead of him in the pickup, and he was not close up when his father and brother stopped and got out where the Aebi tractor was, but could see. That he could see Aebi with what looked like a piece of steel pipe about sixteen inches long in his hand; that he saw Aebi grab Burns Hatfield by the bib of his overalls and start to hit him, and that Wayne jerked Aebi down on the ground right quick and that witness came up and held Aebi on the ground for a little while, and that Wayne asked witness not to hit Aebi and he never did hit him, and they after a little let Aebi up. That Wayne took the first jack handle away from Aebi and threw it away; that Aebi picked up a second jack handle and started to hit witness and grazed a paper helmet he had on, that Wayne grabbed and jerked Aebi's hand and the jack

handle hit the side of Aebi's face a little and caused a little scratch along the side of his face; that Wayne took that jack handle away from Aebi. Witness denied that either of defendants tried to hurt Aebi.

Witness further stated that Mrs. Aebi came out and that he told her to get back on her side of the road, but denied that he ever called her a foul name. He denied that his father ever attempted to strike Aebi. He said that Aebi pushed his father, but denied that his father ever fell down, but merely stumbled.

On cross-examination witness was asked: "Did you see your dad, Mr. Hatfield, Mr. Burns Hatfield, do anything? A. Nothing but throw some old stuff out of the road that was in the road." He said he was referring to parts of a tractor, jacks and timbers, but admitted that these objects were out by the south track in the road.

Wayne Hatfield as to the facts of the altercation testified and denied that either he, his father or brother, ever struck Aebi. He said that he and his father got to the scene ahead of Taylor, and that there was but one tractor in the road then, that the other one had been moved, and that Burns Hatfield got out of the pickup and commenced to throw things out of the road, two jacks and took a dish-pan that had tractor parts in it and started to throw it out of the road and Aebi grabbed him by the back of his overalls, the suspenders, and started to hit his father over the head with a jack handle, and that witness grabbed Aebi by the neck and threw him down and choked him, but not enough to hurt him; that he took the jack handle away from Aebi and threw it in the weeds and let Aebi up and about that time Taylor came up and Aebi got another jack handle and started to hit Taylor, and he took the second jack handle away from Aebi.

On cross-examination witness said that the back end of the Aebi tractor was up to the center of the road, that the road was about twenty-five feet wide.

Burns Hatfield testified that he and his sons Wayne and Taylor had a pasture over

west of Clarence Aebi, and had a pump that needed repairs. Said he:

"Well, I—well the boy went over there and looked and then he come back to get us and he said the Aebis had the road about blockaded. There was a tree that had blew down part in the road and it was rather narrow anyway and they had two tractors strung out there and other junk across the road, but he had moved the tractor before we got back down there. I took the tractor and the two boys and was going to move the junk out of the road, so we could get through there without endangering the life and running into a tree."

Witness said that he got out of his pickup; that Aebi had turned stock out and that he told Aebi if he didn't quit that he was going to get into trouble. That Aebi got a jack handle and made a pass at witness but did not even get close before the boys grabbed him. He was asked: "Did all three of you fellows get hold of him?" He answered: "There was no necessity of it. Mr. Aebi couldn't whip anybody." His further testimony was substantially as that of his sons, except on cross examination as to the roadway, he was asked: "Was there sufficient room to pass?" He answered: "There was—when we got back there but when the first boy went through he had to crowd this tree which is a rather dangerous thing to do."

In rebuttal sheriff Mills testified:

"I found that there was adequate room for anybody to drive behind the tractor. The tractor was not blocking the road and if you want the actual distance, I can tell you the distance. The distance that I stepped from bar ditch to bar ditch was approximately 30 feet. From the bar ditch to the back of the tractor, I think, was eight feet. And there was the distance from the back of the tractor to give clear travelling of probably 12 to 15 feet; however, there was some brush lying in the bar ditch on the north side. There was enough room for anybody to drive around the tractor when I was there."

■ Considering first the proposition urged by counsel as being prejudicial to the rights of defendants, we note that when Clarence Aebi, the prosecuting witness, was being cross-examined by defense counsel, he was asked: "He [Burns Hatfield] hadn't put his hands on you until you shoved him?" Witness answered: "Yes", and was asked: "When?" and he answered, "When he was turning around and grabbing for me", whereupon, the record shows, the defendants burst out in loud laughter, whereupon the court said:

"Just one moment. The defendants will have to refrain from making any vocal outbursts at this time. This court will hold you in contempt of court if—at any time hears any outburst on any one of the defendants. Now I want you to remember that."

A few moments later the court further stated:

"A minute ago when I admonished the three defendants to refrain from making any vocal outbursts, that admonishment has nothing to do with this trial. But this is a court room and being a court room, it is the duty of the court to control anything that reflects upon the dignity of the court and its proceedings. And my admonishment to the defendants must be disregarded by the jury as far as the evidence of this trial. It is not. And I want to clarify that with the jury at this time. You may go ahead."

It was certainly the duty of the trial court to maintain order and dignity in the proceedings before his court, and we feel that the jurors well understood that the admonition applied not only to the defendants, who were the cause of the court making the comments, but to any other person or persons who might do anything to disturb or interfere with the proceedings. We find no reversible error in the respect complained of.

The complaint that the judgment is excessive and contrary to the law and evidence, in view of the record that we have summarized, cannot be sustained, because the court properly instructed the jury as to the law applicable. No exceptions were interposed to any instruction, and no additional instructions were offered. The case resolved itself down to the sufficiency of the evidence. And as we have innumerable times pointed out, it was the province of the jury to weigh the evidence and to determine the credibility of the witnesses. As we said in Sandy v. State, 94 Okl.Cr. 80, 231 P.2d 374, 375, and cases cited:

> "Where the evidence is conflicting, the weight of the evidence and the credibility of the witnesses is for the jury, and Criminal Court of Appeals will not substitute its judgment for that of the jury where there is evidence reasonably tending to support the conclusions reached by the jury."

The situation presented by the record might have been avoided by just a little diplomacy and neighborliness. It is evident that the two young men did not want to seriously hurt the prosecuting witness. It is regrettable that they must serve a jail sentence, but the jury in determining who started the fight, who passed the first blow, no doubt was influenced by the fact that after Taylor Hatfield found the road crowded by the two Aebi tractors in the road, drove home and caused his father, Burns Hatfield to become incensed at Aebi, whom he stated was in the habit of letting his stock out in the road, and when he and Wayne arrived on the scene, though the second tractor had been moved and there was ample room to pass, nevertheless Burns got out of his truck and instead of asking Aebi to move items out of the roadway, proceeded to speak to him in an uncomplimentary way and in angry tones, and to throw his tools and tractor parts into the weeds, action wholly unnecessary to provide room to pass on down the road. Perhaps defendants did not believe that the prosecuting witness would move the tools or permit them to do so. They wholly failed to find out by asking, and proceeded summarily to interfere with the work of Aebi and his helpers in reassembling the tractor, conduct that any reasonable person could expect would cause resentment and trouble, and that was rather ruthless. Even if the second tractor had still been in place, the defendant should have asked Aebi to move it, and on failure the matter could have been speedily resolved by a call to the county attorney or sheriff. Where citizens take matters such as this in their own hands, tragedy is usually the result.

The jury has decided the issue of fact, and it is our duty to affirm the verdict rendered, and the judgment entered.

The judgment is affirmed.

BRETT, P. J., and NIX, J., concur.