Freddie Lee TILFORD, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-14041.

Court of Criminal Appeals of Oklahoma.

May 31, 1967.

On Rehearing Feb. 21, 1968.
Second Rehearing Denied March 18, 1968.

Malcome (Mac) Oyler & Clay Wise, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Charles L. Ownes, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Freddie Lee Tilford, Melvin Alphonzo Lewis and Donald Lee Pendleton, were charged conjointly in the District Court of Oklahoma County, with the crime of Murder. A severance was granted and thereafter on the 18th day of February, 1966, Melvin Alphonzo Lewis was tried by a jury, convicted and his punishment fixed at death in the electric chair. Freddie Lee Tilford, hereinafter referred to as the Defendant, was tried by a jury, found guilty

and judgment and sentence fixing his punishment at death in the electric chair was rendered against him on the 23rd day of March, 1966. A timely appeal has been perfected to this Court.

The undisputed evidence discloses that on the evening of the 26th day of December, 1965, at approximately midnight, three men drove to the vicinity of 23rd and Bartell Road in Oklahoma County, two men alighted from the car and entered a service station operated by Luther McDonald, and proceeded to rob him. During the course of the robbery one Levi Bret Gritts entered the premises and was rendered unconscious by a blow administered by one of the robbers. A shot was fired on the premises and Mr. McDonald was wounded. He was then forced to accompany the two men to their parked automobile where he was placed on the front seat of the car and the car sped away. Several shots were fired into the body of Mr. McDonald and at the intersection of 36th and North Bartell (a few blocks from the scene) Mr. McDonald was removed from the car by his assailants and left wounded on the pavement where he was later discovered and taken to the hospital where he expired as a result of the gunshot wounds.

Taken from the scene where the robbery occurred was a .32 calibre Beretta automatic pistol and a wrist watch belonging to the deceased, a wrist watch belonging to the witness, Levi Gritts, and cash in the amount of $106.12. A description of the automobile in which the robbers were traveling was given to the police and in the early morning of December 27, 1965, an automobile matching that description was discovered by police officers Kenneth Jacobson and Grady Coffman at 23rd and Douglas Boulevard in Oklahoma County. Freddie Lee Tilford, defendant herein, was an occupant of said vehicle at the time of its discovery and shortly thereafter, Tilford, together with Pendleton and Lewis, who arrived at the scene in a car driven by Linn Yarborough, were placed under arrest.

Evidence adduced on the trial linking the defendant with the commission of the homicide, was as follows:

Levi Bret Gritts testified that at around midnight on December 26, 1965, he got out of his car and walked in the front door of the Fina service station located on the northwest corner of 23rd and Bartell Road in Oklahoma County and immediately observed two Negro males (later identified as Tilford and Pendleton) near the door and the service station attendant across the room. One of the Negroes had a mustache. The next thing he remembered was recovering consciousness in the restroom and trying to telephone the police. He discovered that his wristwatch and billfold were missing. Officer Don Robertson later apprehended the defendant at which time he was wearing this same wristwatch.

Jerry Delaney testified that he was the owner of the Fina station and he identified the .32 calibre Beretta automatic pistol as one owned by McDonald and used for protection at the station. This pistol was later found in the car that the defendant got out of, by Officer Kenneth Jacobson.

Grady Coffman testified that he was a police officer of Midwest City and in that capacity in the early morning of December 27, 1965, he checked a car at 23rd Street and Douglas Boulevard in Oklahoma County and found the defendant sitting inside in the driver's seat. The defendant was asked to get out of the car and during this time another car, driven by Mr. Linn Yarborough, drove up with two Negro males, later determined to be Lewis and Pendleton, as passengers. Upon checking Yarborough's automobile the next day, the officers found a .22 calibre pistol on the floor on the passenger's side of the front seat, later identified to be the death weapon.

Kent Harrison testified that he was a police officer with the Oklahoma City police department and on December 26, 1965, he went to a block north of the intersection of 36th and North Bartell Road to investigate a man lying on the side of the road. He found Luther McDonald lying at that

location and determined that he had apparently been shot about four times. After a brief conversation with the victim, this witness alerted other cars by radio to look for three Negro males, one with a mustache, driving possibly a 1960 Ford, light over either brown or orange in color. He later testified that he noticed what appeared to be blood on the hands of the defendant at the police station on the night of the shooting.

Robert Singleterry testified that he was employed in the crime laboratory of the Oklahoma City police department and that he picked up certain physical evidence at the scene of the crime and also made a diagram and took photographs of such scene. He also searched the car that this defendant got out of and found in the glove compartment four live .22 calibre shells, and underneath the floor mat he found three spent .22 calibre shells, along with a watch crystal.

Keith Brown, an officer with the Oklahoma City police department, testified that he and Officer Booker searched the three subjects and found on Pendleton's person a bloody and wet handkerchief and he observed what appeared to be blood stains on the lower part of defendant's pants.

The state chemists testified that the blood was analyzed and found to be human blood, type "O," and Doctor W. Tom Johnson testified that McDonald's blood was type "O" negative.

Donald Lee Pendleton testified that he was the same person previously charged along with Lewis and this defendant for the murder of Luther McDonald, and that he was with Lewis and the defendant on the night of December 26th and the morning of December 27, 1965. He further testified that they parked the car in which they were riding near the Fina station at 23rd and Bartell and that he and defendant went inside. Shortly after they went inside, a shot was fired by defendant from a pistol. He ran from the station and shortly thereafter the defendant brought the station attendant, McDonald, to the car. McDonald

was ordered into the car where he sat on the passenger side of the front seat. Defendant sat on the left side of the rear seat, the witness sat on the right rear side and Lewis drove. Two shots were fired inside the car from the side where the defendant was sitting. Shortly thereafter, they pulled McDonald out of the car and then drove to a cafe in Green Pastures. There they had some drinks and he was ordered by defendant to take his handkerchief and wet it and go outside and wipe the blood out of the front seat of the car. Later they started back to Oklahoma City and ran out of gas somewhere on 23rd Street. He and Lewis were able to get a man to drive them to a service station for gas, while defendant remained in their car to wait for them. When they returned, a number of police officers were around the car. The police arrested all three and took them to the police station.

Defendant, Freddie Lee Tilford, elected not to take the stand nor to put on any witnesses.

The defendant argues four propositions of error for which he seeks a new trial. Argued under the several propositions are assignments of error to which no objections were interposed, nor exceptions taken, and they will not be dealt with in this opinion, for although the Court has carefully examined these assignments of error, they are not of such fundamental character as to justify a reversal or modification of the judgment and sentence imposed. We shall, therefore, consider the defendant's first proposition and the assignments of error thereunder to which objections were interposed and exceptions taken to the ruling of the court.

Proposition Number One is "CONDUCT OF THE COURT WHICH PREJUDICED DEFENDANT'S RIGHT TO A FAIR AND IMPARTIAL TRIAL."

Under the first proposition, counsel for the defendant sets out from the case made a number of instances in which he believes there was error in the trial court's rulings on objections. He further points out the

following instance in which the court asked a witness a question for clarification purposes:

"BY MR. WISE:

Q. Officer, you stated that it appeared to you to be blood?

A. Yes.

Q. That would indicate to you and to me and to the jury perhaps that you are not certain; are you certain, sir?

A. No sir. If I were certain I would say so.

MR. WISE: I believe that's all.

THE COURT: Officer Robertson, this substance on the defendant's hands, did it appear to be the same substance that was on his pants?

MR. WISE: If the Court please—Judge—

(Whereupon a discussion was had off the record.)

MR. WISE: If the court please, comes now the defendant and moves for a mistrial in this particular case based upon the question asked by His Honer, Judge Jack R. Parr, for reason that the county attorney did not ask the question, that it might not have been called to the mind of the jury; that such a question would indicate that the testifying witness could clearly state an opinion that it appeared to be the same when in substance he could not know and that such a question would create a doubt in the minds of the jury as to the position of the defendant in this particular case and we feel that it is so highly prejudicial that a mistrial should be directed at this time.

THE COURT: Motion for mistrial will be overruled.

MR. WISE: Exception."

■ In the case of Stanley v. State, 94 Okl.Cr. 122, 230 P.2d 738, this Court held:

"4. A trial court is not required to be a mere umpire, but in the interest of justice, and to see that both sides have a fair and impartial trial, may interrogate a witness, but in so doing must refrain from allowing his action or words to indicate to the jury his opinion of the guilt or innocence of the defendant or the credibility of any witness.

5. A trial judge has the right, in the exercise of his discretion, to ask of any witness such questions as will tend to elicit the truth, and so long as the judge does not, by his questions or conduct, indicate his views as to the matters at issue, a defendant will not be heard to complain of any question asked by him which is reasonably calculated to elicit the truth."

■ We are of the opinion that the remarks and questions from the trial court here in question, seem to be quite in order, and that the question propounded by the trial judge was an effort on his part to clarify the testimony relating to the substance observed on the hands of the defendant, for the benefit of the jury.

Defendant's Proposition Number Two is: "CONDUCT OF THE COUNTY ATTORNEY MAKING PREJUDICIAL REMARKS AND INTERJECTING THE DEFENDANT'S CHARACTER INTO THE TRIAL WITHOUT THE DEFENDANT HAVING TAKEN THE STAND IN HIS OWN DEFENSE WHICH PREJUDICED DEFENDANT'S RIGHTS TO A FAIR AND IMPARTIAL TRIAL."

In this regard defendant refers to the closing argument of the County Attorney when he advised the jury that "there is not one iota of evidence disputing any of these witnesses in this case" (CM 377), and that "there is not a word of evidence that the state put on that is disputed" (CM 378).

■ This Court has repeatedly held that the statute forbidding comment on the failure of the accused to testify in his own behalf does not prevent fair argument of the testimony. Buie v. State, Okl.Cr.App., 368 P.2d 663.

In Denney v. State, Okl.Cr.App., 346 P.2d 359, this Court, speaking through the Honorable Judge Powell, stated:

"The Oklahoma statute prohibiting comment on failure of defendnat to testify is comprehensive in the extreme and the Court of Criminal Appeals will not enlarge nor extend its provisions so as to prevent a fair discussion of the evidence, even though the defendant did not testify and called no witnesses in her behalf. This statute will not be deemed to go to the extent of prohibiting comment upon inferences reasonably to be drawn from a failure to controvert the State's evidence by proper proof other than that which might be given by the defendant personally."

▮▮ Generally, remarks of the prosecuting attorney, including such as might or would otherwise be improper, are not grounds for reversal where they are invited, provoked, or occasioned by accused's counsel or are in reply to or retaliation for his acts or statements. In the case of Cherry v. State, 33 Okl.Cr. 37, 241 P. 833, it is stated:

"It is not reversible error for counsel for the state to comment on the failure of a defendant to testify, where defendant's counsel himself first comments on the fact that the defendant did not take the stand."

This is precisely what happened here, for appearing in the casemade at page 386, counsel for defendant made the following argument to the jury:

" * * * Mr. Tilford did not testify. That was my choosing, not his, but if he testified and he is guilty he will lie to you to save my skin. Mr. Tilford his innocence. If I was guilty I would lie to you to save my skin. Mr. Tilford could testify to nothing whatsoever about this crime. The only thing that he could possibly have said was about leaving the car, the fact that they picked him up and he was in the car afterwards, but as to the crime itself, if he's guilty and he's going to lie to you, he still couldn't testify to that could he and he wouldn't, but I wouldn't put him on because I don't want him at this point, when the State has not made any form of a case at all, to go on the witness stand and try to explain or explain away something that he knows nothing about. In my opinion, ladies and gentlemen, it's not good judgment, and he didn't know that he wasn't going on the stand. He thought he was going on the stand. * * *"

▮ We are of the opinion that the remarks of the County Attorney did not constitute a comment on the failure of the defendant to testify in his own behalf, but assuming that such remarks might be so construed, the defendant is precluded from assigning this as error for the remarks were made in response to arguments of defense counsel to the jury and were invited by such remarks.

Defendant's third proposition is: "ERROR IN ALLOWING TESTIMONY OF AN INCOMPETENT WITNESS, DONALD LEE PENDLETON, OVER THE OBJECTION AND EXCEPTION OF DEFENSE COUNSEL." Counsel for defendant quotes page after page of the testimony of the witness Pendleton in an attempt to show little discrepancies therein, and in a further attempt to show that he did not remember certain things. After pointing out these bits of testimony, he urges that the witness was legally incompetent to testify.

▮ In the case of Watkins v. Watkins, 206 Okl. 589, 245 P.2d 434, the Supreme Court held:

"When a court finds that at the time a person was produced as a witness, such person was of sound mind, fully understood the obligations of an oath, and capable of giving correct accounts of the matters at issue, such person is not an incompetent witness because previously had been adjudged incompetent."

Further in the case of Beard v. State, 37 Okl.Cr. 62, 256 P. 354, this Court, speaking

through the Honorable Judge Edwards, stated:

"When a witness is objected to on the ground that he or she is incompetent by reason of want of intelligence, it is the province of the trial court to determine the witness' competency, and its decision will not be reversed unless there is a clear abuse of discretion."

See also Miller v. State, Okl.Cr.App., 295 P. 403.

 As to the minor discrepancies in the witness' testimony, this Court stated in the case of Hatfield v. State, Okl.Cr.App., 325 P.2d 972, in Syllabus No. 2, the following:

"Where the evidence is conflicting, the weight of the evidence and credibility of the witnesses is for the jury, and Criminal Court of Appeals will not substitute its judgment for that of the jury where there is evidence reasonably tending to support the conclusions reached by the jury."

From an examination of the testimony of the witness Pendleton, we are of the opinion that the trial court did not abuse his discretion in determining the competency of said witness.

 This leads us to a consideration of defendant's fourth and last assignment of error, the same being: "CUMULATIVE ERRORS WHICH, WHEN CONSIDERED, TOGETHER, DENIED THE DEFENDANT OF A FAIR AND IMPARTIAL TRIAL." We have carefully examined the record in its entirety and after careful examination must conclude that there is no single error or combination of errors sufficient to require a reversal or modification of the sentence imposed. The defendant was accorded a fair and impartial trial before a jury of his peers. The uncontroverted evidence is clear and convincing that he unmercifully and wantonly shot the deceased with the intention to kill him and left him on the streets of the city to die.

For all of the reasons above set forth, the judgment and sentence appealed from is affirmed.

The date originally appointed for the execution of the defendant Freddie Lee Tilford having passed pending this appeal, it is ordered, adjudged and decreed by this Court that the judgment and sentence of the District Court of Oklahoma County be carried out by the electrocution of the defendant Freddie Lee Tilford by the Warden of the State Penitentiary at McAlester, Oklahoma, on Friday, July 7, 1967.

NIX, P. J., and BRETT, J., concur.

## MEMORANDUM OPINION ON REHEARING

BUSSEY, Judge.

On May 31, 1967, this Court affirmed the conviction of the plaintiff in error, hereinafter referred to as defendant, wherein he had been convicted of the offense of Murder. At the conclusion of his trial, the jury assessed punishment at death in the electric chair.

Thereafter, the matter was submitted for reconsideration on Petition for Re-hearing, under the rules of this Court. In reviewing the allegations contained in the Petition for Re-hearing, this Court, on the 27th day of July, 1967, ordered an Evidentiary Hearing to be conducted, the pertinent parts of said Order being as follows:

"WHEREAS, Plaintiff in Error has filed a Petition for Rehearing in the above styled and numbered cause, alleging that the trial court made the following statement in the presence of the jury:

'THE COURT:

Let the record show that the court has had the opportunity to observe the witness under both direct examination and under extensive, highly repetitious cross-examination and the court is impressed with the fact that the witness is obviously not only sane, but quite competent. His answers are straightforward, he is coherent in all material

respects and his appearance and demeanor on the stand display the utmost assurance. He has had no difficulty in detailing past events under the most grueling cross-examination and therefore, Mr. Wise, your motion for mistrial will be overruled and the court is convinced beyond any doubt that the witness is not only a competent witness, but has basically testified to the truth in this case. Your objections will be overruled.'

AND WHEREAS, it is necessary for a determination of this issue to be properly considered by this Court that a hearing be conducted in the District Court of Oklahoma County at which testimony of the trial Judge and counsel for the defendant and counsel for the State be given an opportunity to present testimony on this issue.

IT IS THEREFORE THE ORDER OF THIS COURT that the Presiding Judge of the Seventh Judicial District direct that a hearing be conducted on the issue so raised, transcribe the evidence presented thereon, and transmit a copy of said record to this Court within a reasonable time.

\* \* \*"

Thereafter, on September 6th and September 11th, 1967, proceedings were had in said cause, the same were transcribed and filed with this Court on October 20, 1967.

In the Evidentiary Hearing the first witness was Judge Jack R. Parr, who was the Trial Judge in the original proceeding. He testified to the fact that the conversation complained of by defendant was held at the Judge's bench, in low monotones and in his opinion, the jurors could not have heard the conversations. Mr. Curtis P. Harris, the then County Attorney who tried the original case, testified essentially to the same testimony as that given by Judge Parr, and he too felt that none of the jurors could have heard any remarks made by Mr. Wise or the Court at that time.

Mrs. Mary O. Harris, one of the jurors, and the first witness for the defense, testified that she did not hear the complained of conversation. The defense attorney then asked her if she did not state that "she had heard and remembered every word of the conversation" in a discussion had with her the day before, to which she replied that this was an opinion she had formed. She further testified that she heard some few words, but no one sentence. She stated that because of the circumstances and the fact that the defense attorney made many objections and asked to approach the bench, she reached the opinion that they were discussing the competency of the witness Pendleton, but that she actually did not hear any conversation.

The next defense witness was Willie Jacobs, an alternate juror who stated: "Yes, I did hear. I couldn't hear part, you know what I mean, the exact words that he said, all of them." He further stated that the Judge's tone of voice was just about normal, not an outburst and not a soft tone. His testimony further revealed that he was closer to the Judge and the Court Reporter than any other juror and he did hear Judge Parr state that the witness Pendleton was competent to testify. Shortly thereafter the trial ended and he was excused as an alernate juror and did not enter the jury room when they were deliberating.

The next witness was Harley S. Rohrer, the other alternate juror, who testified that he heard some words, but it had been so long that he could not say exactly what he had heard. It was his impression that the Judge ruled that Pendleton's testimony was competent. He, too, was closer to the Judge and the Court Reporter than any of the regular jurors, and he testified that although he heard a part of Judge Parr's statement, it was a whispered conversation.

The next witness was juror Mary Louise Schott, who testified that although the complained of conversation was whispered,

she did hear parts of it, but did not give it her attention.

The next witness was juror Francis W. Holt who testified that the complained of conversation was in subdued tones; that he did hear the Court make some statements; that he thought what he heard was in reference to the competency of the witness.

The next witness was Clay Wise, the defense attorney at the trial, who testified that the Judge spoke in a subdued voice and it was his opinion that a juror, if he really wanted to, could hear the statement of the Court; that he was standing in front of the Court Reporter and could hear the conversation and that his "hearing was bad, very bad."

The next witness called was Mary Jo Nelson, a reporter for the Oklahoma Publishing Company, who testified that she was standing very close to the Judge's bench and that she heard the Judge's conversation, and that the Judge spoke louder than a whisper, but not a normal tone.

The last witness called was Freddie Lee Tilford, the defendant, who testified that he heard the Judge's conversation.

For the record Mr. Wise then testified that he and Mr. Oyler had tried to contact all of the jurors, but were unable to reach four of them; however, he did want the record to show that they had made every effort to contact all of the jurors.

The question before us for determination is whether enough of the trial judge's statement above referred to, was heard by the jurors so as to create a prejudice against the defendant. There is no question but that if any of the jurors heard the judge's statement that "the court is convinced beyond any doubt that the witness is not only a competent witness, but has basically testified to the truth in this case" this remark would constitute reversible error, for it is clearly a comment on the weight and credibility to be given the testimony of the witness Pendleton. However, on the record before us, we do not find that any of the jurors who participated in the deliberation heard this remark or were influenced by it. Counsel for defense were given every opportunity to produce evidence that the complained of remarks were heard by the jurors who participated in the verdict, but they failed to meet this burden, although we are confident that they exercised diligence in attempting to secure such evidence. It is significant that at the time the alleged remarks were made that no specific objection was taken to the remarks but only to the ruling of the court. Moreover, we observe that this specific assignment of error was not set forth in the Motion for New Trial and that it was not until the petition for rehearing that great emphasis was placed on this alleged irregularity. We must, therefore, conclude that this assignment of error is not supported by the record and for this reason hold that it does not form either a basis for a modification or a reversal of the judgment and sentence rendered by the jury.

This Court will not presume either a waiver of a constitutional right from a silent record, or will it presume error and it is incumbent upon one asserting error on appeal to support the alleged assignment of error by evidence properly preserved in the record.

Having dealt fully with the other assignments of error in our original opinion, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, AFFIRMED. It is the further order of this Court that the judgment and sentence of the District Court of Oklahoma County be carried out by the electrocution of the defendant Freddie Lee Tilford by the Warden of the State Penitentiary at McAlester, Oklahoma, on Friday, April 26, 1968.

BRETT, J., concurs.