Larry Don **FITE**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–73–77.

Court of Criminal Appeals of Oklahoma.

Sept. 7, 1973.

Sam Sullivan, Durant, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Linda Frye, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Larry Don Fite, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Bryan County, Case No. CRF–72–129, for the offense of Unlawful Delivery of Marijuana, his punishment was fixed at ten (10) years in the state penitentiary, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial Cary Thurman testified that on October 12, 1972, he was working as an undercover narcotics agent. That evening the defendant came over to his car and they talked for approximately ten minutes. He asked defendant if he was "holding anything." (Tr. 8) Defendant thereupon sold him a bag of marijuana for ten dollars. He subsequently delivered the bag of marijuana to Agent Ed Loffi. In cross-examination he testified that Ruth Fryer, LaFay Lester and Janis Morris were in his car ar the time of the transaction. He denied giving marijuana to LaFay and Janis.

Edward Loffi, agent for the State Bureau of Investigation, testified that on the

evening in question he was with Detective Lilley, of the Durant Police Department, across the street from "Orval's Home Grown" when he observed Mr. Thurman drive into the parking lot. He saw a tall white male come over to Thurman's car. Shortly thereafter Thurman left the parking lot and at 11:40 p.m. he gave him a plastic bag containing a green leafy substance. He testified that he delivered State's Exhibit 1 to the Oklahoma State Bureau of Investigation Laboratory and turned it over to Chemist McAuliff.

John McAuliff, Chief Chemist for the Oklahoma State Bureau of Investigation, identified State's Exhibit 1 as the envelope delivered to him by Agent Loffi. He examined the substance contained therein microscopically and conducted a chemical test of the substance. Both tests were positive for cannabis sativa or marijuana.

Officer James Elledge testified that he served the defendant with an arrest warrant and advised him of his constitutional rights. Defendant said "he never did sell to very many little kids." (Tr. 32)

Detective William Lilley testified that he was present and heard Officer Elledge advise defendant of his rights.

Officer Bob Hendrix testified that he assisted in transporting defendant to the county jail. Defendant was examining the arrest warrant when the officer stated "it looks like you sold to the wrong man," whereupon defendant replied "Yea, I guess I did." (Tr. 36) While being booked into the county jail, defendant stated "I didn't sell to very many of these kids."

For the defendant, LaFay Lester testified that she was seventeen years old and a senior in high school; that on the evening in question, she and Janis Morris were present with Cary Thurman and Ruth Fryer; that on the way to Durant, Thurman stopped at a liquor store and purchased a bottle of wine. They all drank some of the wine. She was sitting in the back seat of Thurman's vehicle at Orval's Cafe when defendant came over and talked. She testified that she did not see

any marijuana sold by the defendant. Later that evening Cary Thurman gave her a marijuana cigarette. On cross-examination she testified that Thurman and Ruth Fryer had asked her to find some marijuana for them. In the past defendant had furnished her marijuana. She testified on recross-examination that it was possible that the marijuana had been delivered and that she did not see it.

Janis Morris, age sixteen, testified that she was a junior in high school; that Cary Thurman and Ruth Fryer picked her and LaFay Lester up in Caddo and took them to Durant. On the way, Thurman purchased a bottle of wine which they all consumed. She was sitting in the back seat when defendant came up to Thurman's car. She did not see defendant deliver anybody any marijuana. Later that evening Thurman bought a six-pack of beer and gave it to three high school boys. She further testified that Thurman gave her a marijuana cigarette. On cross-examination she testified that Thurman asked the defendant "if he was hold." (Tr. 67) She also admitted hearing some conversation concerning money between Thurman and the defendant. She further admitted having smoked marijuana with the defendant on previous occasions.

In rebuttal Cary Thurman testified that he offered the two girls the wine because he did not want to "blow my cover;" that when he picked the two girls up they had been smoking marijuana. He admitted buying the beer for the boys because he again did not want to blow his cover. He denied giving marijuana to either of the girls.

LaFay Lester and Janis Morris were recalled in surrebuttal and reaffirmed that Thurman gave them a marijuana cigarette.

The first proposition asserts that the trial court erred in overruling the demurrer to the evidence and information and refusing to direct the verdict for the defendant. Defendant argues that the State's evidence was insufficient in that the only witness testifying to connect the defendant with the alleged offense was

Cary Thurman, who admitted contributing to delinquency of two minor girls by giving them beer and wine and contributed to the deliquency of two minor boys by purchasing beer for them whereas the defendant produced two witnesses who testified that they did not see the defendant deliver any marijuana.

We are of the opinion that the trial court correctly overruled defendant's demurrer to the evidence. Cary Thurman testified that the defendant sold marijuana to him. LaFay Lester testified that she was present at the time but did not see the transaction take place. She testified that she was sitting in the backseat and that the marijuana could have been "possibly" delivered. Janis Morris testified that although she did not see the transaction take place, she heard Thurman ask the defendant if he was "holding anything." She further heard some conversation concerning money. We thus conclude that there was sufficient evidence, if believed, to submit the question of fact to the jury. We have consistently held that where the evidence is conflicting and different inferences can be drawn therefrom, it is the province of the jury to weigh such evidence and determine the facts. Jones v. State, Okl.Cr., 468 P. 2d 805.

Defendant next argues that he was entrapped into selling marijuana to Cary Thurman. We likewise find this argument to be without merit. The record is totally devoid of any evidence of entrapment as to the defendant. Thurman testified that he asked the defendant "are you holding" and "can I buy some," whereupon the defendant sold the marijuana. There is no evidence in the record that defendant even knew of Thurman's activities in sharing wine with the girls or buying beer for the high school boys.

The second proposition contends that the trial court erred in failing to grant a mistrial by reason of inflammatory and prejudicial statements of the district attorney in closing arguments. The record reflects that the following transpired:

"Much was made in Mr. Sullivan's closing argument of whereabout Ruth Fryer is, and his statement to you was, 'I would have her here, if I could find her.' And he's right. Unfortunately the State of Oklahoma has no control over witnesses whose lives have been threatened.

"BY MR. SULLIVAN: Now, your Honor, there is no testimony to that effect.

"BY THE COURT: I will sustain the objection, and I admonish the jury to disregard the statement of counsel." (Tr. 102)

In the recent case of Kitchens v. State, Okl.Cr., 513 P.2d 1300, we stated:

"The court's admonition to the jury not to consider the remarks of counsel, or a witness, usually cures an error unless it is of such a nature after considering the evidence that the error appears to have determined the verdict."

We are of the opinion that the improper remarks did not determine the verdict in view of the overwhelming evidence of defendant's guilt. We further observe that the remarks were invited by defense counsel's lengthy discourse on the failure of Ruth Fryer to appear as a witness. In Tilford v. State, Okl.Cr., 437 P.2d 261, we stated:

"Generally, remarks of the prosecuting attorney, including such as might or would otherwise be improper, are not grounds for reversal where they are invited, provoked, or occasioned by accused's counsel or are in reply to or retaliation for his acts or statements."

The final proposition contends that the punishment is excessive. We have repeatedly held that the question of excessiveness of punishment must be determined by a study of all the facts and circumstances of the particular case. Hall v. State, Okl.Cr., 492 P.2d 344. From the foregoing statement of facts we cannot conscientiously say that the punishment imposed shocks the conscience of this Court. The judgment and sentence is affirmed.

BLISS, P. J., and BRETT, J., concurs.