[Crim. No. 20873. Second Dist., Div. One. Apr. 20, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT CASAS ENCISO, Defendant and Appellant.

## COUNSEL

Joseph E. Gerbac, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Norman

H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—After expressing a doubt as to defendant's present sanity and suspending criminal proceedings, and after a sanity hearing wherein the issue was submitted on the reports of Doctors Myers, Davis and Deering, the trial judge found defendant to be presently insane and committed him to Atascadero State Hospital. Nine months later defendant was returned to court certified as able to stand trial; after a hearing the court found him to be presently sane and reinstated criminal proceedings. Defendant waived a jury trial and submitted the issues raised by his pleas of not guilty and not guilty by reason of insanity, and diminished capacity on the transcript of the testimony taken at the preliminary hearing. The court found defendant guilty of two counts of first degree burglary (§ 459, Pen. Code), five counts of first degree robbery (§ 211, Pen. Code), four counts of oral copulation (§ 288a, Pen. Code), four counts of rape (§ 261, subd. 4, Pen. Code) and two counts of assault with a deadly weapon (§ 245, Pen. Code); it further found no evidence of insanity and the allegations that he was armed to be true. He appeals from the judgment.

### COUNTS I THROUGH IV

At 11 p.m. on November 28, 1969, defendant and one Joe burglarized the apartment of Ronald Conover; defendant forced an occupant, Mrs. Day, at gunpoint, out of bed and into a closet where he forced her to engage in an act of oral copulation and raped her, after which he robbed her of jewelry and money. Defendant admitted to police he and Joe entered the Conover premises, took property, and had intercourse with a woman.

### COUNTS V THROUGH XIV

On January 9, 1970, around 9 p.m. defendant forced his way into the Dace apartment where Mrs. Dace was alone with her son, Tracy, 14 months old, and G., a 14-year-old girl. With a gun in one hand and kitchen knife with a 6-inch blade in the other, defendant ransacked the premises taking money and other property, and money and jewelry from Mrs. Dace. In a nightmare of physical abuse defendant tied his victims, threatened their lives and forced Mrs. Dace to engage in oral copulation and intercourse, and the girl to engage in two acts of oral copulation and submit twice to sexual intercourse. Meanwhile Dace and a Mr. Fox arrived;

defendant forced them inside at gunpoint, after which they were tied with strips of sheet; Mr. Tutt, the landlord, came to the apartment and he too was forced inside. Defendant tried to force Dace to rape the girl, then a second time raped Mrs. Dace during which he laid his gun on the table; Dace, who was able to reach the firearm, jumped on top of defendant and hit him over the head; the girl also hit him on the head, with a soda bottle. As a result defendant suffered a depressed open skull fracture which was surgically treated.

### Counts XV through XVII

When Fox and Dace entered the apartment, defendant at gunpoint took their wallets, and from Tutt, $223 and other items.

As to the January 9 incidents, defendant told the officer he did not remember entering those premises but had entered an apartment, carried a gun, had intercourse with a woman and took some money; he was 19 years old and not legally in the United States.

On the issue of defendant's sanity and mental capacity to commit the foregoing offenses, it was stipulated that the court could read and consider five medical reports—Doctors Davis, Myers, Deering, Drucker and Bielinski. For the People, Richard Newfield testified that on August 30, 1968, defendant was committed to California Youth Authority and paroled October 17, 1969; during that time there was no indication that defendant was found to be insane or suffered from any mental illness. For the defense, Dr. Davis testified that in his opinion defendant was legally sane at the time of the commission of the offenses but that his mental capacity was severely impaired and he could not fully appreciate right or wrong or fully understand the nature of his acts. Dr. Myers expressed doubt that defendant was completely insane at the time the offenses were committed, but on recross-examination admitted he thought defendant was sane at that time. In the opinion of Dr. Deering, a rebuttal witness, defendant was legally sane at the time the crimes were committed.

Appellant contends that the trial court refused to allow him to represent himself in that once having made a request to act as his own counsel he cannot be denied the right to represent himself without first waiving such right, and before proceeding with the trial the court had the duty to advise him of the right and ask him if he desired to represent himself. The claim is groundless because after defendant was returned to court not only was he not refused the right to represent himself but deliberately elected to be represented by the public defender.

At the time of plea, although represented by counsel, defendant moved

to represent himself whereupon the court gave him a form to complete and sign. Thereafter the court fully advised him of his rights, asked him a series of questions and found that he was not competent to represent himself. (Appellant concedes that at that time the motion was properly denied and that he was not then competent to act as his own counsel.) After denial of the motion defendant asked the court, "At the time of trial would I be able to make a statement for a Pro Pose [*sic*] at that time?" His counsel then explained, "Another pro per motion is what he's talking about," and the court answered, "That is up to the trial court," whereupon defendant asked, "There is a possibility then?" and the court said, "Well, yes, you could make the motion again if you wish." Four months later defendant was found to be presently insane and committed to the state hospital; in eight and one-half months (March 30, 1971) he was returned to court, again represented by the public defender, at which time a lengthy discussion took place between defendant and his counsel, the prosecutor and the trial judge during which he waived his constitutional rights, and the cause was submitted on all issues on the preliminary hearing transcript. Neither then nor at any later time on the trial level did defendant make known a desire to represent himself, mention the subject or renew his motion or request. In support of his present claim that having once made a request to represent himself he could not thereafter be denied this right without having waived the same and the trial court should have warned him of his right to self-representation, appellant relies on rules covering the reverse situation in which (1) a defendant in a criminal case is allowed to represent himself without first waiving his right to counsel, and (2) an accused is not warned of his constitutional rights before being interrogated by police.

Factually, defendant knew that he had the right to act as his own counsel (if the court found him competent to represent himself), that he had a right to renew his previous request and how to make it, having done so before and been thoroughly questioned concerning his competence. Had defendant in good faith wanted to represent himself he had every opportunity upon his return from the state hospital to renew his request, properly place the matter before the trial judge and, if found competent to act as his own counsel, waive his right to counsel and proceed to trial representing himself. Thus, we can only assume that with full knowledge of his rights defendant made a considered decision wherein he elected not to represent himself but to accept the services of the public defender, and deliberately failed to renew his request for self-representation knowingly and intelligently waiving said right.

■ Appellant argues that when he made his initial request the trial court held he was not competent to represent himself "due to the fact he was even incompetent to stand trial at that time" and "no determination

was made on the issue." The argument is based on an unwarranted assumption. From the court's questions, defendant's answers and the court's statements in denying the request it is at once clear that indeed the trial court made a determination "on the issue" of defendant's competence to represent himself and that it was based solely on information supplied by defendant orally and in writing which at that time carried no suggestion that he was not competent to stand trial. Among other things, that information established that defendant was only 19 years old and had but a 9th grade education. At that point in the proceedings no one had questioned defendant's sanity; it was not until later that the first doctors were appointed to examine defendant, and June 11, 1970, that the court expressed a doubt concerning defendant's present sanity at which time it found him incompetent to stand trial.

In light of the record and defendant's undisputed knowledge of his right to represent himself, the question whether the trial judge had a duty to "warn" him of his right to self-representation seems to be somewhat academic. ■ However, it appears from the numerous California authorities discussing that right that initially the burden is on the defendant to assert his right to self-representation whereupon the duty falls upon the trial court to examine him for the purpose of determining if he is competent to defend himself.

The peculiar nature of the right to represent one's self in a criminal proceeding is such as to destroy any analogy appellant seeks to draw between it and a defendant's constitutional right to be represented by counsel. ■ While the right of a defendant in a criminal case to waive counsel and represent himself is, according to the California Supreme Court, a constitutional right (*People* v. *Williams*, 2 Cal.3d 894, 908 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People* v. *Robles*, 2 Cal.3d 205, 218 [85 Cal.Rptr. 166, 466 P.2d 710]; *People* v. *Floyd*, 1 Cal.3d 694, 702 [83 Cal.Rptr. 608, 464 P.2d 64]; *People* v. *Maddox*, 67 Cal.2d 647, 651 [63 Cal.Rptr. 371, 433 P.2d 163]; *People* v. *Carter*, 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214]; *People* v. *Harmon*, 54 Cal.2d 9, 15 [4 Cal.Rptr. 161, 351 P.2d 329]; *People* v. *Mattson*, 51 Cal.2d 777, 788-789 [336 P.2d 937]; *In re Johnson*, 62 Cal.2d 325, 335-337 [42 Cal.Rptr. 228, 398 P.2d 420]) based upon California Constitution, article I, section 13, it is not an absolute but a qualified right. ■ The right can be exercised only when the trial court is satisfied from proof offered by defendant that he is competent to act as his own counsel; even then the trial court's determination whether he is capable of making a knowing and intelligent election is a discretionary matter which, absent a showing of abuse of discretion will not be disturbed on appeal. (*People* v. *Robles*, 2 Cal.3d 205, 218 [85 Cal.Rptr. 166, 466 P.2d 710]; *People* v. *Floyd*, 1

Cal.3d 694, 703 [83 Cal.Rptr. 608, 464 P.2d 64]; *People* v. *Daniels,* 71 Cal.2d 1119, 1141 [80 Cal.Rptr. 897, 459 P.2d 225]; *People* v. *Carter,* 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214].) ■ "[A] defendant may waive counsel and choose to represent himself only if the defendant has an intelligent conception of the consequences of his act (*People* v. *Carter, supra,* 66 Cal.2d 666, 670) and understands the nature of the offense, the available pleas and defenses, and the possible punishments (*In re Johnson,* 62 Cal.2d 325, 335 [42 Cal.Rptr. 228, 398 P.2d 402])." (*People* v. *Floyd,* 1 Cal.3d 694, 703 [83 Cal.Rptr. 608, 464 P.2d 64]; *People* v. *Williams,* 2 Cal.3d 894, 908 [88 Cal.Rptr. 208, 471 P.2d 1008]; *In re James,* 38 Cal.2d 302, 313 [240 P.2d 596]; *People* v. *Kellett,* 1 Cal.App.3d 704, 709-710 [81 Cal.Rptr. 917]; *People* v. *Addison,* 256 Cal.App.2d 18, 23 [63 Cal.Rptr. 626].) ■ " 'The inquiry into the defendant's ability to defend himself fulfills a two-fold purpose. It serves not only to determine his competence, but also to alert him to the seriousness of the action he contemplates as well as the pitfalls he may expect to encounter.' (*People* v. *Carter, supra* [66 Cal.2d 662, 672].)" (*People* v. *Williams,* 2 Cal.3d 894, 908 [88 Cal.Rptr. 208, 471 P.2d 1008].)

Although the authorities hold that the right to defend one's self and the right to be represented by counsel if such representation is desired, are fundamental, primary and constitutional rights, our research has revealed no case in which an issue relating to the duty of a trial court to "warn" a defendant in a criminal case of his right to self-representation has been raised. However, in all cases dealing with the right of a defendant to act as his own counsel, the court's denial or granting of such right seems to arise as the result of some kind of request initiated by the defendant on the trial level, and discussion thereof is always in terms of such a request. ■ Thus, the implication is strong that if a defendant wishes to act as his own counsel it is incumbent upon him to initiate a request therefor, and not upon the court initially to advise him of that right. ■ Further evidence that the right is not an absolute one and the assertion thereof emanates from a defendant's request therefor and not from a "warning" by the court is prevailing case law to the effect that if defendant's request is not timely made it properly may be denied. (*People* v. *Durham,* 70 Cal.2d 171, 191 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Johnson,* 13 Cal.App.3d 1, 4 [91 Cal.Rptr. 203]; *People* v. *Bonville,* 267 Cal.App.2d 4, 9 [72 Cal.Rptr. 592]; *People* v. *Ruiz,* 263 Cal.App.2d 216, 221-225 [69 Cal.Rptr. 473].)

Authorities discuss the right of a defendant to represent himself in a criminal case in terms of an intelligent and understanding waiver by him of his right to counsel after a judicial determination of defendant's competence to represent himself. (*People* v. *Williams,* 2 Cal.3d 894, 908

[88 Cal.Rptr. 208, 471 P.2d 1008].) But in none of the cases discussing a defendant's constitutional right to be represented by counsel is there mention of the necessity for a waiver by defendant of his right to represent himself before he may proceed with counsel. ■ To implement the constitutional guarantee to assistance of counsel at all stages of criminal proceedings, at the outset the court is required to inform a defendant who is not represented by an attorney of his right to counsel, inquire if he desires the assistance of one, and either (1) appoint counsel if he desires one but is unable to employ one, or (2) if he does not desire counsel, determine if he is competent to represent himself, and if so, obtain an intelligent and understanding waiver of his right to counsel. ■ To require a trial court to warn a defendant of his right to represent himself and ask him if he desires to assert such right at a time when either he has not yet sought the assistance of counsel or is without an attorney and seeks one or appears with counsel, might impair a defendant's right to be represented by counsel; from such "advice" the layman could well infer that the situation was not so serious that he could not take care of it himself and there was really no necessity for a lawyer. The very complicated and technical nature of criminal proceedings and their emotional impact on the accused, and the lack of ability of the average layman to understand such proceedings and properly protect his rights without legal assistance would, in our view, warrant the absence of any procedure that might tend to encourage one to act as his own counsel. The very foundation of our legal system and the fair and impartial administration of justice is based on the right of every litigant to be represented by competent counsel and, if in a criminal case he cannot afford one, counsel will be appointed for him; thus the natural legal state of an accused facing a criminal prosecution is not that of an untrained layman attempting to protect his rights without the aid of counsel, but of one properly represented by a competent lawyer.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.