William Orville COLE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–899.

Court of Criminal Appeals of Oklahoma.

Sept. 13, 1977.

John T. Elliott, Public Defender, Frank Muret, Asst. Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Donnie G. Pope, Legal Intern, for appellee.

## OPINION

PER CURIAM:

The Appellant, William Orville Cole, hereinafter referred to as defendant, was charged and tried, after waiving his right to counsel and to a jury trial, in the District Court of Oklahoma County, for Assault with a Deadly Weapon, Case No. CRF–76–154. After submission of all evidence, the trial court found the defendant guilty of the lesser included offense of Assault and Battery With a Dangerous Weapon. From a judgment and sentence assessing punishment at a term of two (2) years under the direction and control of the Department of Corrections of the State of Oklahoma, the defendant has perfected this timely appeal.

At the outset of this decision, the trial judge should be commended for the patience and consideration he showed this defendant throughout the trial. The defendant, having studied some constitutional law probably in a political science course at Central State University, insisted upon serving as his own legal counsel. As a result, the trial judge was called upon to demonstrate his patience and understanding of the defendant's inept decision.

Briefly stated the evidence presented at trial was as follows: Officer Richard Logan of the Oklahoma City Police Department testified that on January 13, 1976, at approximately 2:10 a. m., he responded to a disturbance call at an apartment unit in Oklahoma City. Upon arrival he observed the defendant and Don Helm, an off-duty police officer, in the parking lot. Both parties appeared as if they had been scuffling. Helm had a scratch across his nose and a cut on the left hand and the defendant had a laceration on the top of his head and a cut on his hand. Officer Logan took the defendant into custody and also took possession of a Samurai ornamental sword. The defendant was taken to a hospital for treatment. The witness further testified that the defendant was incoherent at the time of his arrest.

Officer Don Helm testified that he resided in the apartment complex and was taking some items out of his car when he observed the defendant walking nearby with what appeared to be a rifle. Noting that the defendant was mumbling outloud, Helm identified himself as a police officer and asked if he needed any help. Upon closer inspection he observed that the defendant was actually carrying a sheathed sword. He went to his apartment and telephoned for a police scout car. Shortly thereafter he observed the defendant "cracking" and "poking" the sword on the back of his vehicle. Helm told the defendant that he was under arrest for destroying private property and to drop the sword. The defendant refused to drop the sword and a scuffle ensued. During the scuffle the defendant unsheathed the sword and Helm's head was cut in an attempt to ward off a jab. The officer was also struck in the face and it became necessary for him to strike the defendant on the head with his service revolver. The defendant was subsequently subdued. The state then rested.

The defendant testified that he was a student at Central State University and that on the evening of January 12, 1976, he went to a bar. He related that he took his Samurai sword with him to show to a friend. Returning to his apartment he was confronted by a man in civilian clothes who grabbed his sword and asked him what he was doing with a cane. The man then took the sword and threw it to the ground and

struck the defendant. The man then identified himself as a police officer. The officer thereafter struck the defendant on the head and hand with the butt of a pistol. The defendant denied striking the officer or the officer's car. After being wrestled to the ground the defendant asserted he was kicked prior to being taken into custody. The defendant received a total of some nine stitches on his head and hand. The defendant further testified that the sword was ornamental and not a weapon.

The key to the conflict of testimony in this case lies in the arrival of the Police Scout car. Officer Helm testified that he left the defendant in the parking area, went into his own apartment and telephoned for the assistance of a Scout Car. He picked up his service revolver and placed it in his pocket for his own protection. He returned to where the defendant was in the parking area, after which the scuffle ensued. The defendant testified that at no time did Officer Helm leave the parking area after he first encountered the defendant. However, the record reflects that the Scout Car arrived at the scene some five minutes after Officer Helm placed his telephone call.

The defendant's first assignment of error asserts that he did not knowingly and intelligently waive his right to counsel because the trial court did not adequately explain the consequences of self-representation.

The record indicates that prior to trial an attorney from the office of the public defender was appointed to represent the defendant and accompanied him on the day of trial. Prior to trial the defendant announced that he wished to exercise his Sixth Amendment right to personally represent himself without the assistance of counsel. At that time the trial court advised the defendant that he would be expected to abide by standard trial procedure and that if his defense was unsuccessful he would be unable to raise denial of counsel as a basis for appeal. The trial court further required the public defender to remain at the counsel table to assist the defendant.

In our recent decision of *Johnson v. State*, Okl.Cr., 556 P.2d 1285, (1976) we held, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, (1975) that an accused under the Sixth Amendment has the personal right to make his own defense without the assistance of counsel. However, when an accused represents himself he relinquishes many of the traditional benefits associated with the right to counsel. For that reason, in order to represent himself, the accused must knowingly and intelligently waive those benefits. The test whether an accused intelligently elects to represent himself is not the wisdom of the decision. All that is required for an effective election is that the accused have full knowledge or adequate warning concerning this right and a clear intent to exercise it.

In the instant case it is apparent from a reading of the transcript that the defendant was not schooled in the law. However, under *Faretta*, supra, the defendant's technical knowledge of the law is irrelevant to an assessment of his decision to knowingly exercise the right to personally defend himself. The trial court advised the defendant of the possible consequences of his decision but the defendant still demanded to represent himself. The trial court then took the precaution of requiring the court appointed attorney to stand by and to assist if requested. We find no error on the part of the trial court and the defendant's first assignment is without merit.

The defendant's second assignment of error contends that the record is insufficient to show an affirmative waiver of the defendant's right to a jury trial.

As stated in *Butler v. Page*, Okl. Cr., 421 P.2d 276, it is well settled that an accused may waive his constitutional right to a trial by jury. Whether or not the accused knowingly waives that right, depends, in each case, upon the particular facts and circumstances.

In the instant case the public defender, who was required by the trial court to assist the defendant, interrogated him

concerning his desire to waive trial by jury. The defendant was advised that the purpose for the jury was to determine the facts and the ultimate guilt or innocence of an accused. The defendant stated that he understood and still waived his right to jury trial. The waiver was knowingly made and the second assignment is without merit.

■ The defendant's last assignment urges that the punishment assessed was excessive. Again, we disagree. The sentence was well within the limits prescribed by law, the maximum sentence under 21 O.S. § 645 being five years. We do not find the sentence imposed in the instant case to be so excessive as to shock the conscience of the Court. *Williams v. State*, Okl.Cr., 512 P.2d 827.

After making a finding of guilt, upon the request of the bail bondsman, the court allowed the bondsman to surrender the defendant's bond and a new bond was set for the defendant in the amount of Three Thousand Dollars ($3,000.00), and defendant was placed in the custody of the Sheriff. On the date for sentencing, the defendant's father testified that in his opinion the defendant, a veteran of the Viet-Nam conflict, needed psychiatric care and was not entirely responsible for his actions. On cross-examination of his father the defendant denied such care was required and attempted to rebut his father's contentions by certain scholarly dissertations. Thereafter, the court assessed defendant's punishment at two years control under the Department of Corrections.

It is therefore our opinion after a thorough examination of the record that the defendant received a fair and impartial trial and that the judgment and sentence appealed from should be and the same is hereby *AFFIRMED*.