Daniel Wayne FELTS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–525.

Court of Criminal Appeals of Oklahoma.

Dec. 12, 1978.

W. Creekmore Wallace, II, Sapulpa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Jerry Earl Benson, Legal Intern, for appellee.

## OPINION

CORNISH, Judge:

Daniel Wayne Felts brings this appeal from a jury conviction for Robbery With Firearms, After Former Conviction of a Felony, in the District Court, Creek County, Case No. CRF–74–182, October 16, 1975. He was sentenced to fifteen (15) years in the State penitentiary.

Because the sufficiency of the evidence is not before this Court on appeal, we deem only a brief recitation of the facts essential. Succinctly stated, the case involved the violent beating with a sawed-off shotgun and robbery of a Sapulpa, Oklahoma, physician at the Curry Clinic where he resided, during the early morning hours of August 4, 1974. The doctor was beaten by three men, including the defendant, and robbed of his automobile, shotgun, credit cards, a coin collection, and his medical bag containing narcotics.

Since the defendant's first two assignments of error involve his right to counsel, a brief chronology of events follows to elucidate the substance of these contentions. The defendant's first trial, held March 19, 1975, in which he was represented by attorneys C. Clifton Brown and Ronald Mook, ended in mistrial during selection of the jury. The docket sheet shows that Mr. Brown had been appointed to represent the defendant on March 7, 1975. Mr. Mook was privately retained. In the middle of July, 1975, both Brown and Mook filed applications for leave to withdraw. Both motions were granted.

C. Clifton Brown was immediately reappointed to represent the defendant, as reflected by a docket sheet minute to this effect. However, the order appointing Brown was not filed until October 10, 1975. A docket sheet entry reveals that on September 11, 1975, trial was reset for October 8, 1975, and defendant was transferred from the State penitentiary to the Creek County jail on that date. The same day, Brown spoke with the defendant and obtained the names and addresses of three witnesses, for whom subpoenas were then issued.

The cause came on for trial on October 14, 1975, but defendant moved for a continuance on two grounds: First, one of the defendant's subpoenas had not yet been returned; and, second, the defendant wanted more time in which to secure the attorney of his choice, Ronald Mook. The court granted the defendant several recesses to enable him to contact his witnesses and Mook, but when his efforts proved futile, the judge ordered the cause to proceed to trial on October 14, 1975.

The defendant's first assignment of error contains three propositions. First, he contends that the trial court erred in forcing him to proceed to trial with an attorney unsatisfactory to him. Second, he urges that the trial court erred in not advising him that he had a right to represent himself. Third, the defendant asserts that the trial court erred in not allowing the court-appointed attorney to withdraw after the defendant attempted to dismiss him.

The defendant's first proposition alleges that the trial court erred in forcing him to proceed to trial with a court-appointed attorney unsatisfactory to him. This argument is without merit. It is firmly established in this jurisdiction that when a

defendant has been given adequate opportunity to secure counsel of his choice, his "simple preference for another attorney is not an effective deprivation of the assistance of counsel." *Williamson v. State*, Okl. Cr., 532 P.2d 444, 450 (1975). This Court held in *Wilson v. State*, Okl.Cr., 467 P.2d 532 (1970), that a defendant who had been aware for five months of charges pending against him and who had ample opportunity to secure other counsel could not predicate error on the trial court's refusal to grant a continuance requested on the day of trial to enable the defendant to secure counsel other than the court-appointed attorney who had been representing him for two months before trial. In the instant case, the defendant had seven months (March 19, 1975 to October 14, 1975) between the time of his mistrial and the trial in question to secure private counsel. The defendant emphasizes he was in custody in the State penitentiary pending trial and was unable to actively assist in procuring counsel. However, this Court has held that detention in custody is but one of the factors to be considered under the total circumstances of the case. *Williamson v. State*, supra, at 449. The record shows that the defendant had the services of two attorneys at his prior trial, which resulted in a mistrial, one of whom was subsequently made his court-appointed counsel notice of which appointment was given defendant, while in custody. The record affirmatively shows that defendant had the assistance, while incarcerated, of his mother and sister, had reasonable notice of the trial date, and had access to his court-appointed attorney. The trial court made reasonable inquiry as to whether the defendant could retain a private attorney and even granted recesses to enable him to contact private counsel. We, therefore, hold the defendant was granted a reasonable opportunity to secure representation at trial by the attorney of his choice. It appears from the record that the defendant simply desired to employ an attorney he could not afford, even with the financial assistance of family members. Since the defendant had sufficient time and opportunity to secure private counsel and failed to do so—indeed

was unable to do so—it was proper for the court to compel the defendant to proceed to trial with the court-appointed counsel. *Tillman v. State*, Okl.Cr., 490 P.2d 1369 (1971).

■ Defendant's next proposition is that the court erred in not advising him of his right to represent himself. However, the record discloses the defendant never expressed a desire to personally defend himself. The defendant's counsel cites *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), as authority that a defendant has a right to be advised that he may represent himself at trial. But a careful reading of *Faretta* discloses that the holding requires not that a defendant be advised of his right to defend himself, but rather that a court cannot force a lawyer on a defendant who *insists* on conducting his own defense and voluntarily and intelligently elects to do so. Justice Blackmun commented in his dissenting opinion to *Faretta*, "the opinion leaves open a host of other procedural questions. Must every defendant be advised of his right to proceed pro se? If so, when must that notice be given?" 422 U.S. at 852, 95 S.Ct. at 2549.

Our research reveals no case in this jurisdiction since the *Faretta* ruling in which the issue of the duty of the trial court to advise a defendant in a criminal case of his right to self-representation has been raised. Our decisions on pro se representation have primarily dealt with whether an accused has knowingly and intelligently waived the benefits of counsel and voluntarily elected to proceed pro se. See, *Cole v. State*, Okl.Cr., 569 P.2d 470 (1977); *Parker v. State*, Okl. Cr., 556 P.2d 1298 (1976); *Johnson v. State*, Okl.Cr., 556 P.2d 1285 (1976); and *Stiner v. State*, Okl.Cr., 539 P.2d 750 (1975). However, in the cases dealing with the right of self-representation, the trial court's denial or granting of this right resulted either from the defendant's request at the trial court level or by some action or conduct of the defendant that amounted to an election for self-representation.

We stated in *Johnson v. State*, supra, at 1296, that:

". . . All that is required for an effective election for self-representation is that the defendant have full knowledge or adequate warning concerning this right and a *clear intent to exercise it.* . . ." [Emphasis added, citations omitted].

We take note of a post-*Faretta* ruling by the Tenth Circuit Court of Appeals which stated, "[W]e are persuaded that the right is one which *the defendant must clearly and unequivocally assert before trial, as the accused did in Faretta.* . . ." *United States v. Bennett,* 539 F.2d 45, 50 (10th Cir. 1976), [Emphasis added]. The implication of these cases is strong that if a defendant wishes to proceed pro se it is incumbent upon him to initiate a request therefor and not a duty for the court to advise him of this right.

We think the proper rule is contained in *United States v. Dujanovic,* 486 F.2d 182 (9th Cir. 1973). For some time prior to *Faretta,* the Ninth Circuit recognized that a criminal defendant has a constitutional right to represent himself. See, *Arnold v. United States,* 414 F.2d 1056 (9th Cir. 1969), cert. denied, 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970). The Court in *Dujanovic* stated:

". . . The Ninth Circuit decisions speak subjectively of an accused having a constitutional right to have competent counsel, and also, a constitutional right to represent himself *pro se* ; however, it is manifest that any such two constitutional rights cannot actively co-exist. The very thesis of [*Adams v. United States, ex rel. McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942)] and [*Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)] is that the constitutional right of counsel, specifically expressed in the Sixth Amendment, may be waived by an accused, through an intelligent relinquishment or abandonment thereof, and only then may the *correlative* constitutional right of self-representation be asserted and brought into play." [Emphasis original] 486 F.2d at 185.

Thereafter the Court stated:

". . . An accused has the limited constitutional right *upon demand* to com-

petently and intelligently waive his constitutional right to assistance of competent counsel and assume the management and control of his defense or participate therein under controlled circumstances as determined by the trial court." [Emphasis added] 486 F.2d at 186.

Prior to *Faretta,* California authorities held that the right to defend one's self was a fundamental, primary and constitutional right. *People v. Enciso,* 25 Cal.App.3d 49, 101 Cal.Rptr. 590 (1972). However, the notion that it was incumbent upon the court to initially advise a defendant of his right to self-representation was rejected in *People v. Enciso,* supra. We deem sound the post-*Faretta* reasoning of a California Court of Appeals decision in *People v. Salazar,* 74 Cal.App.3d 875, 141 Cal.Rptr. 753, 761 (1977), reaffirming this rule:

"Unlike the right to the *assistance* of counsel, the right to dispense with such assistance and to represent oneself is guaranteed not because it is essential to a fair trial but because the defendant has a personal right to be a fool. This right is afforded the defendant *despite* the fact that its exercise will almost surely result in detriment to both the defendant and the administration of justice. ·. . . It would be fundamentally unwise to impose a requirement that the court advise or suggest to a defendant this procedure which is likely to be to no one's benefit." (Emphasis original, citation omitted)

In the instant case, the record discloses that the defendant neither rejected the offer of court-appointed counsel, nor waived his right to counsel. His sole object was to secure a lawyer of his own choosing. Defendant's complaints did not require the trial court to inquire whether the defendant might prefer to represent himself. Therefore, the defendant's second proposition is meritless.

■ The defendant's third proposition is that the trial court committed error in refusing to allow the defendant's court-appointed counsel to withdraw on his own

motion after the defendant had attempted to dismiss him. This proposition is frivolous since neither the defendant nor his counsel made a showing of good cause for the withdrawal. The burden is on the defendant to establish good cause for appointing new counsel, and absent such showing it will be denied. *Johnston v. State*, Okl.Cr., 555 P.2d 629 (1976).

■ The defendant's second assignment of error is that he was inadequately represented by his court-appointed counsel. In this jurisdiction, the burden on a defendant to establish his claim of ineffective counsel is a heavy one. Neither hindsight nor success is the measure for determining adequacy of counsel. *Ellis v. State of Oklahoma*, 430 F.2d 1352 (10th Cir. 1970). In *Walker v. State*, Okl.Cr., 550 P.2d 1339, 1343 (1976), we stated that the "burden is clearly upon the defendant to establish inadequate representation, and this burden is not sustained by simply pointing out possible errors in counsel's judgment or lack of success in defense."

■ Relief will not be granted on the basis of inadequate counsel unless the inadequacy is such that it reduces the trial to a farce or a mockery of justice or is shocking to the conscience of the reviewing court. *Cowan v. State*, Okl.Cr., 507 P.2d 1256 (1973). From the record it is clear defendant's counsel was adequately prepared to defend the defendant and did, indeed, adequately defend him at trial. The trial was not a farce or mockery of justice, nor is its outcome shocking to the conscience of this Court. As a result of the court-appointed counsel's effective representation, the defendant received a 15 year sentence, even though the prosecution recommended a 75 year sentence. The minimum sentence provided by statute for this crime is ten years with a maximum sentence of life imprisonment. Considering the violent nature of this crime, it is apparent that the defendant received benefit from the effective representation of his court-appointed counsel. The defendant's second assignment of error is without merit.

■ The defendant's third assignment of error is that the trial court erred in several instances in commenting on the evidence. Perusal of the record reveals no conduct on the part of the trial judge denoting bias or prejudice against the defendant. The defendant particularly objects to the following in-court exchange:

"Q. And when you talked to Frankie Kendall, what did he tell you?

"A. I asked him where Dr. Martin lived and he said—

"MR. BROWN: Object as hearsay.

"THE COURT: Well, did you learn where his address was?

"THE WITNESS: He just told me that—

"MR. BROWN: Object to whatever he said to him, Judge.

"MR. YOUNG: They interrupt where the witness is answering and it's obliterating the record, Judge.

"THE COURT: Well, let him answer it and then you may object to it, but after he starts answering it, let him answer.

"MR. BROWN: I'm trying to object when the questioning is given, Judge, but what's happening is the District Attorney is asking questions and Your Honor is asking questions and I find it difficult to interpose any objections."

This Court has established in numerous decisions that the trial judge has the right to aid in eliciting the truth. In *Stanley v. State*, 94 Okl.Cr. 122, 230 P.2d 738, 745 (1951), we cited *Schmitt v. State*, 57 Okl.Cr. 102, 47 P.2d 199 (1935), which stated, in part, in the eighth paragraph to the Syllabus that the "defendant will not be heard to complain of any question asked by him which is reasonably calculated to elicit the truth." From the record, it is clear that the trial court showed no bias or prejudice toward the defendant throughout the trial in his attempts to elicit true testimony from the witnesses. The defendant's third assignment of error is therefore without merit.

■ The defendant's final assignment of error is that it was reversible error for the court to allow the prosecuting attor-

ney to ask a co-defendant if he knew a local Creek County crime figure named Jess Henson. There is nothing in the record to indicate that the defendant was deprived of any fundamental rights by the testimony to which he objects:

"Q. Are you acquainted with a man by the name of Jess Henson, please, sir?

"A. [BY JOHNSON] Yes, sir.

"MR. BROWN: Judge, at this time, may we approach the Bench? This is highly inflammatory, prejudicial and irrelevant. We move for a mistrial.

"THE COURT: Mr. District Attorney, I don't know about whether it's germane in any way, but if it's—if it proves not to be, of course, you're going to be responsible for it.

"MR. YOUNG: Well, of course, Judge, I'm not—

"THE COURT: You can't go into all these people.

"MR. YOUNG: Can I approach the Bench, Your Honor?

"THE COURT: Yes, sir."

This is the only reference to Mr. Henson in the entire record. Nowhere in the record is Mr. Henson referred to as a "crime figure," neither is there any mention of Mr. Henson's conviction for first degree murder, nor was there any connection alleged between the defendant and Mr. Henson. In reviewing this testimony so strenuously objected to, the defendant cites no authority whatsoever in support of his contention. It is well settled that where a defendant fails to support his contentions by both argument and citations of authority and it is apparent the defendant has been deprived of no fundamental rights, this Court will not search the books for authorities to support the mere assertion of error. See, *Gomez v. State*, Okl.Cr., 567 P.2d 505 (1977), and *Graves v. State*, Okl.Cr., 563 P.2d 646 (1977). Therefore, defendant's final assignment of error is also without foundation.

The judgment and sentence is *AFFIRMED*.

BUSSEY, P. J., and BRETT, J., concur.